# THE SUPREME COURT

OF

# PENNSYLVANIA.

WESTERN DISTRICT, SEPTEMBER TERM, 1845.

## PITTSBURGH.

The Mayor, Aldermen, and Citizens of PITTSBURGH *v.* THOMAS SCOTT.

### IN ERROR.

The act of Assembly of the 31st of March, 1836, entitled "An act in relation to Duquesne Way, in the city of Pittsburgh," is constitutional.

When private property is taken for public use, it is not necessary that the compensation to the owner required by the Constitution should be actually ascertained and paid before the property is appropriated, but it is sufficient if an adequate remedy is provided, by which he can obtain compensation without any unreasonable delay. The act of the 31st March, 1836, "in relation to Duquesne Way," gives to the owner of a lot in Penn street, to which land bounded by the Alleghany river is appurtenant, and to whom the right of landing on said river belongs, an adequate remedy for the appropriation by the city of Pittsburgh of said land and right of landing by the opening of Duquesne Way.

When such owner was a member of the city councils that authorized the opening of the said way, petitioned them for that purpose, was a member of the committee to which the petition was referred, participated in all the proceedings that resulted in the opening, and stood silently by while the city was making large expenditures and valuable improvements to both the street and landing, he has neither a legal nor equitable right to set up his title against the city.

When a private person suffers some extraordinary damage beyond other citizens by a public nuisance, he shall have a private satisfaction by action, even if his special damage be merely consequential.

ERROR to the District Court of Alleghany county.

This was an action on the case brought by the mayor, aldermen, and citizens of Pittsburgh, against Thomas Scott, to recover damages for obstructing Duquesne Way, and the landing on the Alleghany river.

The declaration contained three counts. The first count alleged in substance, that "there then was, and from thence hitherto has been, and still ought to be, a certain common and public street, or highway,

in the city of Pittsburgh, called and known as 'Duquesne Way,' in and through said city, then and there situate and being in the county aforesaid, for all persons to go, return, pass and repass, on foot and with horses, drays, carts, wagons, &c., at all times of the year, of their free will and pleasure, to wit, in the city aforesaid, in the county aforesaid.

"And whereas, before and at the time of the committing of the grievances hereinafter and before mentioned, the said plaintiffs had employed, engaged, hired, and permitted divers persons with horses and carts and other vehicles, laden with stones, dirt, clay and gravel, and just before, and at the time of, the continuance of said grievances, the said plaintiffs, by their servants, in that behalf, were driving and conducting their said horses and carts and other vehicles, so laden as aforesaid, in, through, over and along, the common and public street or highway aforesaid, to wit, in the city aforesaid, in the county aforesaid, for the purpose of filling up, grading, making and repairing the public wharf along the Alleghany river, between said street and said river in the county aforesaid: Yet the said defendant, well knowing the premises, &c., wrongfully and injuriously built, erected, put and placed certain piles of boards or lumber in, upon and across the said public street aforesaid, for a long space of time from the —————— day of ——————————, A. D. ——————, up to the time of bringing this suit, and thereby during all the time aforesaid, obstructed the said common and public street or highway, and thereby prevented the said plaintiffs from driving and conducting their said horses and carts and other vehicles, so laden as aforesaid, in, through, over and along the said common and public street or highway, by reason of all which the aforesaid premises, the said plaintiffs were obliged to drive and conduct their said horses and carts and other vehicles, so laden as aforesaid, back again, and by a very circuitous road, and for a much greater distance, than the said plaintiffs otherwise would, and, of right, ought to have done, to wit, in Pittsburgh, in the county aforesaid, whereby, &c."

The second count charged, that there was, "and still ought to be a certain public street, called 'Duquesne Way,' in and through said city, for all persons to go, return, pass, and repass on foot, with horses and wagons, drays, carts, &c., at all times of the year, of their free will and pleasure; and also, there then was, and still is, and from thence hitherto has been a public wharf or landing extending along said street, and from said street to the Alleghany river, for all persons to use as a landing or wharf for their boats, rafts, &c.; and for the use of said landing the said 'mayor, aldermen, and citizens of Pittsburgh' receive certain pay, moneys, and wharfage, to wit, in Pittsburgh, in

the county aforesaid; that the said street was greatly used by divers persons for the purpose of passing and repassing, and hauling their lumber, iron, stone, coal, &c., from the said wharf or landing to divers places in said city, and also divers manufactured and other articles from the said city to the said wharf, and was of great use, convenience, and benefit to all persons who used said wharf, and from whom the said plaintiffs derived and received large sums of money for wharfage, as aforesaid: yet the said defendant, well knowing the premises, &c., placed, built, and piled in, upon, and across said public street piles of lumber, dirt, boards, &c., and kept and continued the same in, upon, and across said street for a long space of time, to wit, from the day and year aforesaid to the time of bringing this suit, and thereby prevented the persons, so as aforesaid trading and doing business at said wharf, from passing and repassing, and hauling lumber, &c., in, through, over, and along the said public street, as they were wont to do before the committing of the aforesaid grievances: by reason of all which, the aforesaid premises, the business at the said wharf was greatly injured, and the revenue received by the plaintiffs therefrom, for wharfage, was greatly diminished."

The third count alleged, "that the said plaintiffs, before and at the time of the committing of the grievances hereinafter in this count mentioned, were, and thence hitherto have been, and still are entitled to the possession, custody, and use of a certain wharf in the city of Pittsburgh, lying and being on the line of the northward side of Duquesne Way to the river Alleghany, to have, hold, and use the same as a public landing, for the purposes of trade, commerce, &c., and to receive and collect certain tolls or wharfages for the use and occupation of the same: nevertheless, the said defendant, well knowing the premises, &c., on the 1st day of August, A. D. 1834, and on divers other days between that day and the day of commencing this suit, injuriously and unlawfully, and against the will of the said plaintiffs, used the said wharf for landing, carrying, &c., certain rafts of pine lumber, the property of said defendant, and collected and received for the use of said wharf, from divers persons trading at the city of Pittsburgh, wharfage for lumber, &c., landed at said wharf, against the will of said plaintiffs, and notified, prevented, and hindered the wharf-master, lawfully appointed by the plaintiffs, from collecting and receiving wharfage, which, by law, he was authorized and entitled to collect and receive for the said plaintiffs."

On the 31st of March, 1836, an act was passed by the legislature of this state, authorizing the councils of the city of Pittsburgh to lay out and open a street in said city, to be called "Duquesne Way." The

defendant was the owner of a lot adjacent to said street, and before the opening of the said way, extending to low water-mark in the Alleghany river.

In January, 1839, petitions, signed by the lot owners, were presented to councils, and on the 25th day of February, 1839, an ordinance was passed by the councils, in conformity with the act of Assembly and the prayer of the petitioners, to define and locate Duquesne Way; and, subsequently, they opened the same.  Having fixed the grade, they employed men, horses, and carts, and proceeded to fill up and construct the street and the wharf.    They also collected wharfage. The defendant was a member of the city councils that passed the ordinance to define and locate the way, &c., signed the petitions that were presented for that purpose, was a member, on the part of the select council, of the joint select committee that reported the said ordinance, and participated and acquiesced in all the proceedings which resulted in the opening of the way.

The remaining facts and the provisions of the several sections of the act of Assembly, necessary to elucidate the questions involved and decided in the case, are distinctly stated and referred to by the learned judge who delivered the opinion of this court.

The plaintiffs' counsel requested the court below to instruct the jury, that if they believed the testimony on the part of the plaintiffs respecting the alleged nuisance on Duquesne Way and disturbance of the plaintiffs' right to the wharf, they might find a verdict for at least nominal damages.

The defendant's counsel also requested the court to charge the jury as follows :—

1.  The evidence, admitting its truth, does not establish a right on the part of the plaintiffs to recover in the present form of action.

2.  By the provisions of the act of March, 1836, Duquesne Way must be laid out and opened, at the prescribed grade from Penn street, before the city can take possession of the landing or turn it to purposes of revenue.

3.  The act itself is unconstitutional, because it takes the landing, which is private property, without compensation.

4.  Even if compensation were provided, yet the case is not embraced in the power of eminent domain, and the seizure of private property would therefore be unconstitutional.

5.  The long delay, on the part of the city, to carry out effectually the provisions of the act of March, 1836, annuls the powers and privileges thereby conferred.

The court instructed the jury as requested by the defendant's coun-

sel, and, at the instance of the plaintiffs' counsel, sealed a bill of exceptions.

The jury found a verdict for the defendant; whereupon the plaintiffs removed the record to this court, and assigned the following errors:—

1st. The court erred in declining to charge the jury, as requested by the plaintiffs' counsel, as set forth in the following proposition:

"The court is requested to instruct the jury, that if they believe the testimony on the part of the plaintiffs respecting the alleged nuisance on Duquesne Way and disturbance of plaintiffs' right to the wharf, they may find a verdict for at least nominal damages."

2d. The court erred in their charge upon each of the following points, submitted by the defendant's counsel:

"1. The evidence, admitting its truth, does not establish a right on the part of the plaintiffs to recover in the present form of action.

"2. By the provisions of the act of March, 1836, Duquesne Way must be laid out and opened at the prescribed grade from Penn street, before the city can take possession of the landing or turn it to purposes of revenue.

"3. The act itself is unconstitutional, because it takes the landing, which is private property, without compensation.

"4. Even if compensation were provided, yet the case is not embraced in the power of eminent domain, and the seizure of private property would therefore be unconstitutional.

"5. The long delay, on the part of the city, to carry out effectually the provisions of the act of March, 1836, annuls the powers and privileges thereby conferred."

3d. The charge of the court was, in all respects, in favour of the defendant, whereas it ought to have been in favour of the plaintiffs.

*Smith*, for plaintiffs in error, cited 4 Vin. Abr. 519; 2 Rawle, 93; 1 Rawle, 271; 1 Binn. 463; 7 Watts & Serg. 1; 2 Ed. 154; 1 Penna. Rep. 262; 2 Whart. 508; 7 Hazard's Register, 293; 6 Whart. 45; 6 Watts & Serg. 115; 4 Watts, 407; 3 Watts, 292; 4 Watts, 317, 332.

*Biddle*, for defendant, cited 9 Serg. & Rawle, 52; 2 Johns. C. 163; Bald. 206; 2 Watts & Serg. 32; 2 Kent's Com. 340; 4 Watts & Serg. 227.

*Loomis*, same side, cited Co. Lit. 56; 1 Com. Dig. 430; 1 Whart. 137; 5 Watts, 459; 14 Serg. & Rawle, 13; 3 Watts, 219; 8 Watts, 434; 4 Watts & Serg. 403; Constitution of Pennsylvania, art. 9, sect. 10; 18 Wend. 1, 17, 27, 75.

*Forward*, in reply, for plaintiffs in error, cited 4 Watts, 430.

The opinion of the court was delivered by Rogers, J.

It is an admitted principle, that the right of eminent domain, or inherent sovereign power, gives the legislature the control of private property for public use. For the right of property, in every well-regulated community, is subservient to the general welfare. This right is explicitly recognised in the Constitution of Pennsylvania, art. 9, sec. 10, with most important and salutary restrictions. In that article it is declared that no man's property shall be taken or applied to public use, without the consent of his representatives, and without just compensation being made. As a general rule, it rests in the wisdom of the legislature to determine what is a public use, and also the necessity of taking the property of an individual for that purpose. The right of eminent domain does not authorize the government to take the property of the citizen for the mere purpose of transferring it to another, even for a full compensation, when the public is not interested in the transfer. Such arbitrary exercise of power would be an infringement of the constitution, as not being within the power delegated by the people to the legislature. To justify the exercise of this right, it must be for the use of the public, to be determined in the first place by the legislature, subject, however, to correction or restriction, where it clearly appears, the right is abused either by design, which we cannot well suppose, or, what is more to be apprehended, by hasty and improvident legislation. The right of eminent domain, as has been repeatedly held, may be exercised by the government through its immediate officers or agents, or indirectly through the medium of corporate bodies, or private individuals. It may be exercised not only for the public safety, but also where the interest, or even the convenience, of the state or its inhabitants, is concerned; as for the purpose of making turnpikes or other roads, railways, canals, ferries and bridges for the accommodation of the public. If they have the power for the purposes above stated, they have also the power, as was done here, to take individual property for a public street, or for a public landing. These are improvements, in which not only have the people of Pittsburgh an interest, but they effect more or less every citizen of the Commonwealth, and, as would not be difficult to show, are of great benefit and advantage to the owners of lots, where property has been appropriated to that purpose. There is, therefore, nothing in the exception that the act is unconstitutional, as not embraced in the power of eminent domain.

But the constitution requires a just compensation to the owner. It is ruled in Rogers v. Broadhead, 20 Johns. 735, since recognised in Bloodgood v. M. H. R. R. C., 18 Wend. 17, and in other cases, that where private property is taken for public use, it is not necessary that

the compensation should be actually ascertained and paid, before the property is appropriated. It is sufficient, if an adequate remedy is provided, by which the individual can obtain compensation, without any unreasonable delay. The question is, have these constitutional requisitions been complied with? Is the act of the 31st of March, 1836, entitled "An act in relation to Duquesne Way," constitutional? For I grant that the property must not only be taken for public use, but unless the act provided a reasonable and adequate remedy for persons aggrieved, it is unconstitutional and void, it being contrary to the letter and spirit of the constitution. By the act, certain property belonging to the owners of lots on Penn street, in the city of Pittsburgh, is taken for the purpose of enabling the select and common councils of the city, to define, locate, and cause to be opened, a public street, to be designated and known by the name of Duquesne Way, of a certain width, extending and running parallel with Penn street in said city. After the way shall have been located and opened, the councils are authorized to fix and adopt a convenient grade, for the space lying between the way and low water-mark of the Alleghany river, to be thereafter occupied, used, and employed as a public landing. The act empowers the councils to make such rules, regulations, and by-laws regulating the use of the public landing, as they may think proper, and to charge and enforce the collection of such fees, tolls, and duties in the nature of wharfage, as they may deem just and expedient, and to exercise in every respect over the public street and public landing, when the same shall be opened, the same power and authority which they may or can exercise by law over the public streets and landings within the city. It is further enacted, that when the directions of the act shall have been complied with, the damages paid, or unclaimed, all lots which previous to the opening of the way were bounded by the Alleghany river, shall for ever thereafter be bounded by, and front on, the way authorized to be opened. The operation of the act undoubtedly is, that ipso facto, and by force of the statute, when the city limits and opens Duquesne Way, and in other respects complies with the requisitions of the law, the right not only to the street, but to the land appurtenant attached to the lots on Penn street, bounded by the river, is transferred from the proprietors and vested in the city. It consequently follows, that the owners of the lot are entitled to compensation not only for the ground occupied by the street, but for the value of the landing, at the margin of the river. It must be recollected, that the property of the lot holders extended to the river, and the property is taken from them and vested in the city.

The question then recurs, have the legislature given them an ade-

quate and reasonable remedy for every injury they may sustain, by reason of locating and opening Duquesne Way ? It would be disrespectful to a co-ordinate branch of the government to entertain the idea, for an instant, that they ever could intend to take any man's property, for any purpose whatever, without at the same time paying or providing a reasonable indemnity. Accordingly, we find that they have not been unmindful of their duty in this respect. For in the 4th sec. it is provided, that when the city councils have located and defined the limits of the way, they are directed to have two plans thereof made, showing the location and limits of the way, the streets and lots adjacent thereto, and the names of the owners. One plan is directed to be kept by the City Regulator, the other is ordered to be filed in the office of the Clerk of the Quarter Sessions. The plans are to be opened at all reasonable times, for the inspection of all persons wishing to examine them. They are directed to cause public notice to be given in two newspapers published in the city, for at least two weeks previous to a regular sitting of the Court of Quarter Sessions of the county, of the location and intended opening of the way, and of the place where the plans are deposited for inspection. The act further provides, that any person owning lots, to which the said way is adjacent, who shall consider that he has suffered damage by the location, may make application by petition to the next Court of Quarter Sessions following the publication of the said notice, who shall thereupon appoint twelve discreet and disinterested persons, who shall proceed to inquire, on actual view of the premises, whether any and what damage has or will be sustained by the petitioner, by reason of opening the said way. The viewers are to make report to the next court. It must be conceded, the remedy is in reasonable time ; if exceptionable at all, it is that it is too prompt. But it is not objected to on that ground, but that it is not adequate, because, as the defendant contends, it is confined to damages sustained for the ground occupied by the street, and gives no remedy for a compensation for the value of the landing. If the objection be true in fact, the act is unconstitutional and void, it being a direct infringement on the 10th sec. 9th art. of the constitution.

But this view of the case does great injustice to the legislature. It is a narrow construction of a highly beneficial act. We cannot admit the supposition, that the legislature intended to violate the constitution by withholding from the owners of the adjacent lots the just compensation to which they are entitled. It will be observed, that the legislature have cautiously abstained from defining the rights of the lotholders, as contra-distinguished from the rights of the public. On this some doubts may have been cast, and for this reason they content

themselves with using language sufficiently comprehensive of every interest to which the owners are justly entitled. They are entitled, upon every fair principle of construction, to compensation, at the hands of an impartial jury, for any and every damage they may have sustained by reason of the opening of the way. Now, what injury has the defendant suffered by the action of the city authorities? for to that extent he has a right to claim compensation by the award of a jury. His lot, which, before, was bounded by the river, is now bounded by the street. He is injured to the amount of the value of the property, of whatever nature and description, without limitation or restriction, which has been taken from him for public purposes, and vested in the city. If by force of his grant, which extends to the river, he has a right to a landing, of which we do not doubt, he has a right to claim a fair equivalent, to be assessed by a jury to be selected for that purpose. It weighs nothing on the scale, that he did not think proper to pursue the remedy pointed out in the act. He may have had reasons for this, of which we are ignorant. If he had applied for redress in the proper way, we cannot but suppose justice would have been done; and if refused, he would have had just cause of complaint to the judicial tribunals of the country, which are always open to the injured. The defendant cannot allege, that he omitted to act through ignorance of his rights. He was a member of the councils,—one of those who petitioned the council to open the way,—a member of the committee to whom the petition was referred, and in every stage a warm advocate, and participated in all the proceedings which resulted in opening the street. In addition, the defendant stood by and saw the city, without a whisper of objection on his part, make large expenditures and valuable improvements, not only to the street, but to the landing, to which he never asserts a title. His objections are, therefore, neither supported by law, nor has he any equity to favour his pretensions. The legislature, so far from being obnoxious to the charge of disregarding the title of the lot-holders, have taken unusual pains to preserve their rights. They provided that, before the way be opened, the provisions contained in the act for the assessment of damages and compensation to owners shall first be complied with.

And again, the city are indirectly prohibited from opening the street and making the landing, until the damages, applied for in the manner pointed out, are paid. If Mr. Scott, or any other lot-holder, had had his damages assessed, whatever those damages might have been, the city could have taken no further steps until the damages were actually paid. If, however, the lot-holders omitted to have their damages ascertained, the different provisions of the act had full effect. The title

2 D 2

of the lot-holders, by force of the statute, was bounded by the street, and the remainder, including the street and landing, became the property of the city, under their regulation and control, with express power to use the same as a public landing; to improve and collect such fees, tolls, and duties, in the nature of wharfage, as they may deem just and expedient; to exercise, in every respect, over the said public street and public landing, the same powers and authority which they may or can exercise by law over the other public streets and landings within the city. But when does the authority to exact toll for the use of the landing commence? There is some ambiguity in the act on this point, arising from the difficulty of determining when the street shall be deemed to be opened; but we think that it shall be deemed to be opened, in the language of the act, when the title is vested in the city, and when they have so far completed the landing and grading as that they may justly deem it proper and right to exact toll. In other words, they are at liberty to exact a reasonable toll when part of the way and landing is made; and are not, as is contended by the defendant, bound to wait until the whole way or grading is completed. Any other construction of the act would injure the city, without benefit to any person. It would be unjust, and might have the effect of retarding this much useful work, calculated to add greatly to the beauty of the city and the convenience of commerce; resulting, as it no doubt will, in providing a safe and valuable harbour for the increasing trade of this flourishing city. It is a most important and valuable improvement—involving a great expenditure of money and labour—requiring much time and great economy to complete. And, moreover, it is necessary to its success and permanence that the work be done gradually, so as to withstand the action of the water, which would be apt, in the case of a flood, unless caution be used, to wash away the labour of months, or even of years. It would be doing injustice to the city, that when part of the street and landing was put in proper order for the accommodation of the public, that it should be used for the purposes of trade, without payment of a reasonable and fair equivalent. This, we think, the legislature did not contemplate—there is nothing in the act which leads to such a conclusion. The whole act must be taken together, and must receive such a construction as will carry out the great and beneficial design they had in view. The act was not intended for the private emolument of any person, but was passed under the well founded belief that the interest of the public would be best promoted by making a public landing, and giving the control of it to the city, rather than let it remain subject to the conflicting interests of private individuals. And the object deserves commendation, when it

can be effected without impairing the rights of individual property, and especially so, when it benefits the owners themselves of the property taken.

The court, at the request of defendant's counsel, charged the jury, that the evidence, admitting its truth, did not establish a right on the part of the plaintiffs to recover in the present form of action. It was in proof that two piles of boards, belonging to Scott, were on the line of Duquesne Way, before and at the time the suit was brought. It was also proved that the boards so laid in the public way would and did cause some deviation in carts, &c., employed by the city authorities in carrying dirt and other materials for the use of the city; that it was an inconvenience to the city, but not more inconvenient to them than to others who might have occasion to use the way. That Scott rendered himself liable to an indictment cannot be doubted; but whether an action lies is not so plain. The law is, that no action lies for a public or common nuisance, but an indictment only; because the damage being common to all, no one can assign his particular proportion of it; or if he could, it would be extremely hard if every one was allowed to harass the offender with separate actions. For this reason no person, natural or corporate, can have an action for a public nuisance or punish it, but only the Commonwealth. Yet the rule admits of exceptions. When a private person suffers some extraordinary damage, beyond other citizens, by a public nuisance, in that case he shall have a private satisfaction by action.

As, if by means of a ditch dug across a public way, which is a common nuisance, a man suffer any injury by falling therein, then, for his particular damage, which is not common to others, the party shall have his action. 3 Bl. C. 219. It is agreed, as a general principle, that for an obstruction to a highway, which is a common nuisance, an action cannot be supported but by a person who has suffered some special damage. The various conflicting cases which have been decided, as to what constitutes special damage, are examined in Hughes v. Heiser, 1 Bin. 463. The court came to the conclusion, in opposition to some of the early, and to a more recent case in England, that to support an action for damages occasioned by a common nuisance, it is not necessary that the damage sustained should be direct; it is enough if it be consequential. In Hughes v. Heiser, the plaintiff declared that he had prepared rafts, with intent to navigate them down the river, which was a public highway; and that he did navigate them until he came to a dam, erected by the defendant, by which he was prevented from passing down the river with his raft. It was held, that it was sufficient special damage to support an action. Whether it is

a total or partial obstruction of the way, surely, cannot affect the right of action, as that cannot depend on the question of injury. Then, in Hart *v.* Basset, 33 Charles 2, recognised in Hughes *v.* Heiser, an action was supported by a person entitled to tithes, who, in consequence of an obstruction in the highway, was forced to carry his tithes by a circuitous route.

The declaration alleged, that he was forced to carry them by a longer and more difficult way, and no other damage was shown. To the same point is Chichester *v.* Lethbridge, Willes, 71, also cited in Hughes *v.* Heiser. In Alexander *v.* Kerr, 2 Rawle, 83, it is ruled, that an action on the case will lie for an injury to land, however inconsiderable, which is occasioned by a nuisance. That is a case of a private nuisance, and is a direct injury; still, we think it applicable to an injury done by a common nuisance, the consequence of which is that another is hindered and delayed in his business. It would not be so in England, where a distinction, which we have repudiated, is taken between direct and consequential damage.

The action may be supported on either ground. The plaintiffs declare that the defendant prevented and hindered the wharf-master, appointed by the plaintiffs, from collecting tolls. This was a disturbance of the plaintiffs' right, for which an action will lie. Of this there was some evidence, although not strong, which, we think, ought to have been submitted to the jury.

Judgment reversed, and a venire de novo awarded.