Hillsborough, }
June 24, 1937. }

WILLIAM F. SULLIVAN, *Superintendent of Buildings*

*v.*

ANGLO-AMERICAN INVESTMENT TRUST, INC.

*Aloysius J. Connor* (by brief and orally), for the plaintiff.

*McLane, Davis & Carleton* (*Mr. Carleton* orally), for the defendant.

MARBLE, J. The defendant does not claim that the ordinance under consideration is not a lawful exercise of the power delegated to municipalities by the zoning act, but contends that the use which its lessee proposes to make of the property is in no respect subversive of any of those purposes (the promotion of health, safety, morals, or the general welfare of the community) which all valid zoning regulations must be designed to secure. P. L., *c.* 42, *s.* 48. Indeed, defendant's counsel go so far as to suggest that an injunction restrain-

ing the proposed use can "only be based upon the premise that the old-fashioned attributes of hospitality and family unity are now outmoded."

The answer to this suggestion is that if the single-family restriction tends in any material way to promote the avowed purposes of the statute, it is of no importance that the occupants of the second apartment are relatives or friends of the lessee and pay no rent or that they do not occupy the premises for the entire year. *Sundeen* v. *Rogers*, 83 N. H. 253, 257.

That the prohibited use bears some substantial relation to public safety and general welfare cannot be questioned. And this is so in the present case even if the use to which the premises are put is never any greater than that now contemplated. "Any increase in the number of persons or of stoves or lights under a single roof increases the risk of fire. A regulation designed to decrease the number of families in one house may reasonably be thought to diminish that risk." *Brett* v. *Building Comm'r*, 250 Mass. 73, 78.

In this connection it should be noted that separate heating units and separate wiring systems have been installed for the lower and upper floors of the house in question. Nor is it material, in this aspect of the case, that the city may have enacted special regulations for fire protection. Such regulations do not "estop the city from enacting a different rule" (*Sundeen* v. *Rogers*, 83 N. H. 253, 259), and one of the purposes which zoning regulations in this State should have in view is that of securing "safety from fire." P. L., c. 42, s. 50.

But the defendant argues that the individuals who are to occupy the house comprise but one family according to the ordinary connotation of the term. It is unnecessary, however, to draw fine distinctions as to the exact meaning of the word "family," since no definition can properly be adopted which fails to take into account the object of the ordinance and the extent and character of the alterations made.

This brings us to a consideration of the defendant's further contention (1) that while the zoning act "authorizes regulations governing the actual or proposed uses of existing buildings," it does not apply to "their possible use," and (2) that the Manchester zoning ordinance has attempted "to keep within the limits" of this grant of power. The authority conferred by the statute is thus limited: "A regulation made under this act shall not apply to existing structures nor to the existing use of any building, but it shall apply to any alteration of a building to provide for its use for a purpose or in a manner

substantially different from the use to which it was put before alteration." Laws 1925, c. 92, s. 3.

The defendant in construing this provision of the act pays scant heed to the verb "provide," which means "to take measures in view of an expected or a possible need." The ordinance was unquestionably drawn to conform to this restriction. The statement that no building shall be altered "except for one or more of the following uses" is but another way of saying that no building shall be altered for a prohibited use, and the preposition "for" is often employed in a sense "denoting suitability." In short, there is nothing in the language of the ordinance which may fairly be said to indicate that adaptability for use is not the real test by which alterations are to be judged. Certainly the mere location of an apartment building in a single residence district, irrespective of the use to which the building is put, would be likely to impair the value of other residential property in the district, and the prevention of such impairment is one of the legitimate objects of zoning. P. L., c. 42, s. 50; *Koch* v. *Toledo*, 37 Fed. (2d) 336; *Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288, 302.

The defendant also claims that the proposed use is for the same purpose for which the premises were used before the passage of the zoning law and that such proposed use is therefore unaffected by the ordinance. While the house, when purchased by the defendant, contained a kitchen and bathroom on each floor, it was not apparently used or designed to be used by more than one family. The defendant has erected a partition between the stairs and front hall and has "completely remodeled" all rooms and installed separate heating units and separate wiring systems. These extensive alterations plainly provide for a use substantially different from that to which the premises were formerly put, and the trial court has found as a fact "that it would be reasonably suitable for the premises to be occupied by two separate tenants, one tenant using the front door, and one the side door."

Under the zoning ordinance a "single-family detached dwelling" may be used for any "accessory use customarily incident" thereto. Occupation by domestic help may well be deemed an accessory use within the meaning of this provision. We cannot, however, subscribe to the defendant's contention that the lessee's proposed use, being merely for the entertainment and accommodation of his relatives and friends, is a use customarily incident to the occupation of a single-family residence and falls therefore within the designated exception. So far as we are aware, it is quite uncommon for owners

or lessees of such residences to provide separately heated and separately wired apartments for the use of their visiting relatives and guests.

Section 14 of the zoning ordinance creates a board of adjustment which has power to permit the alteration of existing buildings for a prohibited use. Section 60, clause III, of Chapter 42 of the Public Laws provides that boards of adjustment shall have the power "To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." So far as appears, the defendant has acted in good faith and may be entitled to relief from the local board. If it applies therefor within such time as the trial court may designate, no public interest will be menaced by the withholding of an injunction pending the board's decision.

*Case discharged.*

All concurred.