Best, Appellant, *v.* Zoning Board of Adjustment.

Argued October 9, 1957.   Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

re- argument refused June 3, 1958.

*William Claney Smith,* for appellant.

*J. Howard Devlin,* Assistant City Solicitor, for appellee.

*Frank A. McFerran, Jr.,* with him *Sherman T. Rock* and *Paul, Lawrence & Rock,* for intervenors.

OPINION BY MR. JUSTICE COHEN, May 2, 1958:

In this appeal we are called upon to determine the constitutionality of the single-family dwelling provision of the Pittsburgh zoning ordinance as applied to the property of the appellant.

The appellant, Pauline G. Best, is the owner of a home at 1008 Morewood Avenue, Pittsburgh, which contains twenty-two rooms and seven baths. The property is located in a "C" zoned district of the city and may be used only as a single-family dwelling. Within 200 feet of the home is a district in which multiple-unit dwellings are permitted. In 1950 the appellant applied for a variance and for a permit to allow occupancy by fifteen tenants. The application was denied as was an appeal taken to and heard by the zoning board of adjustment. A further appeal was heard by the County Court of Allegheny County at which time the petition of the Morewood-Shadyside Civic Association to intervene as a respondent was granted.

Appellant's argument to the court below was twofold. First, she contended that she was entitled to a variance because of the financial hardship imposed upon her in maintaining the property as a single-family home and second, that the zoning ordinance as applied to her property was unreasonable, arbitrary, discrim-

inatory and confiscatory, and therefore unconstitutional. The county court found that the appellant's home was not economically feasible for use as a single-family dwelling and that the use proposed by the appellant would not be adverse to the public health, safety or morals of the community. However, the court held that the proposed use would be adverse to the general welfare and contrary to the public interest, and for this reason concluded that the decision of the board of adjustment denying a variance was just and proper and that the zoning ordinance did not result in an unconstitutional invasion of plaintiff's property rights. From the order of the court below sustaining the decision of the zoning board of adjustment this appeal has been taken.

The contentions of the appellant with respect to the refusal of her request for a variance are without merit and, indeed, are not urged on this appeal. When appellant purchased the Morewood house she knew or should have known of the provisions of the zoning ordinance restricting the property to use as a one-family dwelling and of the large expenditures required to maintain and keep up the property. Thus, appellant took the property with the conditions of economic hardship staring her in the face, and she cannot now be heard to complain. *Ward's Appeal,* 289 Pa. 458, 472, 137 Atl. 630 (1927) (concurring opinion). *Cf. Edwards Zoning Case,* 392 Pa. 188, 140 A. 2d 110 (1958). Moreover, as we said in *Michener Appeal,* 382 Pa. 401, 406-407, 115 A. 2d 367 (1955) : "The law is well established that a variance may be granted only where a property is subjected to a hardship unique or peculiar to itself as distinguished from one arising from the impact of the zoning regulations on the entire district." See Act of June 24, 1931, P. L. 1206, §3107, as amended, 53 P.S. §58107. The financial hardship suffered

by the appellant in this case is no different from that endured by the owners of other large homes in the neighborhood who through the appellee Civic Association have actively opposed appellant's request for a variance.

Appellant's attack upon the constitutionality of the application of the Pittsburgh zoning ordinance to her property presents an issue which requires clarification.

Zoning is the legislative division of a community into areas in each of which only certain designated uses of land are permitted so that the community may develop in an orderly manner in accordance with a comprehensive plan.[1] The authority of the legislature to permit the zoning of land is derived, as is all legislative authority, from the governmental power of the Commonwealth[2]—the "police power."[3] This power is plenary except as limited by the State or Federal Constitutions.[4]

The only restrictions upon the power of the legislature to regulate private property rights are imposed by Article I of the Pennsylvania Constitution and the Fourteenth Amendment to the Federal Constitution. Section 1 of Article I of the Pennsylvania Constitution

---

[1] Even before the landmark case of *Village of Euclid v. Ambler Realty Co.*, 272 U. S. 365 (1926), we recognized that zoning was a proper subject for legislative action in *White's Appeal*, 287 Pa. 259, 266, 134 Atl. 409 (1926). However, the standard of constitutionality set forth in *White's Appeal*—"clearly necessary to preserve the health, safety or morals of the people", 287 Pa. at 265, has been modified by the standard promulgated in the *Euclid* case.

[2] *Village of Euclid v. Ambler Realty Co.*, 272 U. S. 365, 387 (1926).

[3] *Mutual Loan Co. v. Martell*, 222 U. S. 225, 233 (1911); *House v. Mayes*, 219 U. S. 270, 282 (1911).

[4] *Munn v. Illinois*, 94 U. S. (4 Otto) 113, 123-124 (1876); *Sharpless v. Mayor of Philadelphia*, 21 Pa. 147, 160-164 (1853).

establishes the right of "acquiring, possessing and protecting property . . . ."[5] The requirements of this section are not distinguishable from those of section 1 of the Fourteenth Amendment to the Federal Constitution—"nor shall any State deprive any person . . . of property, without due process of law . . . ."[6] However, neither the Fourteenth Amendment, broad and comprehensive as it is—nor any other constitutional provision—was intended to interfere with reasonable property regulations, whether established directly by the state or by some public body acting under its sanction, which are designed to accomplish a legitimate public purpose. *Mutual Loan Co. v. Martell,* 222 U. S. 225, 234 (1911); *Chicago, B. & Q. Ry. v. Illinois,* 200 U. S. 561, 592 (1906); *Barbier v. Connolly,* 113 U. S. 27, 31-32 (1885). *Cf. Commonwealth ex rel. Woodside v. Sun Ray Drug Co.,* 383 Pa. 1, 10-11, 116 A. 2d 833 (1955).

In delineating the concept of a "legitimate public purpose" the courts have repeatedly held that property

---

[5] Art. I, §10 of the Constitution of Pennsylvania providing inter alia, ". . . [N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured," is a limitation on the Commonwealth's right of eminent domain and its power to appropriate property. *Sharpless v. Mayor of Philadelphia,* 21 Pa. 147, 166-167 (1853); *Pittsburgh v. Scott,* 1 Pa. 309 (1845). This provision does not apply to regulations affecting the use to which property may be put. *Commonwealth v. Plymouth Coal Co.,* 232 Pa. 141, 81 Atl. 148 (1911), aff'd, 232 U. S. 531 (1914). *In re District of Pittsburgh,* 2 W. & S. 320 (1841); *Case of the Philadelphia and Trenton R. R. Co.,* 6 Whart. 25 (1840). See also Art. 16, §§3, 8 and compare Art. I, §9.

[6] *Commonwealth ex rel. Woodside v. Sun Ray Drug Co.,* 383 Pa. 1, 116 A. 2d 833 (1955); *Hertz Drivurself Stations, Inc. v. Siggins,* 359 Pa. 25, 58 A. 2d 464 (1948). *Cf. Village of Euclid v. Ambler Realty Co.,* 272 U. S. 365, 386 (1926); *Crowley v. Christensen,* 137 U. S. 86, 90 (1890).

regulations which are substantially related to preserving or promoting the public health, safety, morals or general welfare are constitutionally not objectionable.[7] And, thus, the test of constitutionality of a zoning ordinance is whether the health, safety, morals or general welfare of the inhabitants of that part of the community affected will be promoted by the application of the ordinance. *Nectow v. Cambridge,* 277 U. S. 183, 188 (1928).

The City of Pittsburgh has undertaken to control the density of its population in accordance with a comprehensive plan drawn to promote the welfare of the community. It has provided residence districts for single-family homes, for two-family dwellings and for multiple-unit apartment houses. In this manner it has attempted, among other things, to control the demands upon community resources and to prevent an undue strain upon the facilities available in any section of the city. Such an undertaking is neither arbitrary nor unreasonable, and the constitutionality of single-family zoning restrictions have been generally upheld throughout the country as bearing a substantial relationship to the health, safety, morals and general welfare of the community. *Village of Euclid v. Ambler Realty Co.,* 272 U. S. 365 (1926); *Miller v. Board of Public Works of Los Angeles,* 195 Cal. 477, 234 P. 381 (1925), error dismissed, 273 U. S. 781 (1927); *Minkus v. Pond,*

---

[7] *Nectow v. Cambridge,* 277 U. S. 183, 188 (1928); *Gorieb v. Fox,* 274 U. S. 603, 610 (1927); *Village of Euclid v. Ambler Realty Co.,* 272 U. S. 365 395 (1926); *Mutual Loan Co. v. Martell,* 222 U. S. 225, 232 (1911); *Chicago, B. & Q. Ry. v. Illinois,* 200 U. S. 561, 592-593 (1906); *Commonwealth ex rel. Woodside v. Sun Ray Drug Co.,* 383 Pa. 1, 10, 116 A. 2d 833 (1955); *Ward's Appeal,* 289 Pa. 458, 462-463, 137 Atl. 630 (1927); *Pierro v. Baxendale,* 20 N. J. 17, 118 A. 2d 401, 407-408 (1955); *Opinion of the Justices,* 333 Mass. 773, 128 N.E. 2d 557 (1955).

326 Ill. 467, 158 N.E. 121 (1927); *Locatelli v. City of Medford,* 287 Mass. 560, 192 N.E. 57 (1934); *Sullivan v. Anglo-American Investment Trust, Inc.,* 89 N. H. 112, 193 Atl. 225 (1937); *Collins v. Board of Adjustment of Margate City,* 3 N. J. 200, 69 A. 2d 708 (1949). Indeed, the question cannot be considered an open one in Pennsylvania. *Jennings' Appeal,* 330 Pa. 154, 160, 198 Atl. 621 (1938).

Notwithstanding the constitutionality of the ordinance in its general outline,[8] the appellant contends that its application to her property is unconstitutional as being arbitrary, discriminatory, and confiscatory.

The appellant seeks support for her contention that the application of the ordinance to her property is ar-

---

[8] One who undertakes to demonstrate the unconstitutionality of a regulatory enactment has a heavy burden of persuasion to discharge. ". . . [W]e can declare an Act of Assembly void, only when it violates the constitution *clearly, palpably, plainly;* and in such manner as to leave *no doubt* or hesitation on our minds." *Sharpless v. Mayor of Philadelphia,* 21 Pa. 147, 164 (1853). See *Munn v. Illinois,* 94 U. S. (4 Otto) 113, 123 (1876); *Union Pacific R. R. Co. v. United States,* 99 U. S. (9 Otto) 700, 718 (1879); *Hadley's Case,* 336 Pa. 100, 104, 6 A. 2d 874 (1939). The fact that the regulation is in the form of a municipal ordinance rather than a state statute does not alter the burden upon the party asserting its unconstitutionality. ". . . [I]t must be said before the ordinance can be declared unconstitutional, that such provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Village of Euclid v. Ambler Realty Co.,* 272 U. S. 365, 395 (1926). Accord: *Zahn v. Board of Public Works of Los Angeles,* 274 U. S. 325, 328 (1927); *Kerr's Appeal,* 294 Pa. 246, 249-250, 144 Atl. 81 (1928). *Cf. Liggett's Petition,* 291 Pa. 109, 118, 139 Atl. 619 (1927). And even ". . . if the validity of the legislative . . . [judgment] be fairly debatable, the legislative judgment must be allowed to control." *Village of Euclid v. Ambler Realty Co.,* supra, 272 U. S. at 388; *Zahn v. Board of Public Works of Los Angeles,* supra, 274 U. S. at 328. See also *New Orleans Public Service v. New Orleans,* 281 U. S. 682, 686 (1929).

bitrary and unreasonable in the findings of the court below that the proposed use of the property as a multiple-family dwelling is not adverse to the public health, safety or morals. Since the court also found that such use of her property would be contrary to the public welfare, apparently it is the theory of appellant either that the general welfare is *ejusdem generis* with the public health, safety and morals, or that, standing alone, it will not justify the zoning ordinance herein questioned.

More than fifty years ago this argument was presented to the United States Supreme Court in the case of *Chicago, B & Q. Ry. v. Illinois,* 200 U. S. 561 (1906). The answer then given by Mr. Justice HARLAN is the one we now adopt: "The learned counsel for the railway company seem to think that the adjudications relating to the police power of the state to protect the public health, the public morals, and the public safety are not applicable, in principle, to cases where the police power is exerted for the general well-being of the community apart from any question of the public health, the public morals, or the public safety.". . . . "We cannot assent to the view expressed by counsel. We hold that the police power of a state embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals or the public safety.". . . . "Private property cannot be taken without compensation for public use under a police regulation relating strictly to the public health, the public morals, or the public safety, any more than under a police regulation having no relation to such matters, but only to the general welfare. *The foundation upon which the power rests are in every case* the same." 200 U. S. at 592-593. (Emphasis supplied).

Recently the highest courts of the States of Massachusetts and New Jersey have reiterated that the concept of the general welfare is separate from and coordinate with those of the public health, safety and morals.

In approving the constitutionality of a proposed zoning regulation designed to preserve the appearance of certain historic districts in Nantucket, the Massachusetts Supreme Court said: "The proposed act can hardly be said in any ordinary sense to relate to the public safety, health, or morals. Can it rest upon the less definite and more inclusive ground that it serves the public welfare? The term public welfare has never been and cannot be precisely defined. Sometimes it has been said to include public convenience, comfort, peace and order, prosperity, and similar concepts . . . ." *Opinion of the Justices,* 333 Mass. 773, 128 N.E. 2d 557, 561 (1955).

So also, in a case testing the constitutionality of an ordinance which prohibited the building of motels in residential zones but allowed boarding houses therein, the New Jersey high court said: ". . . [A]though earlier cases had confined zoning to such regulations as were needful for the public health, safety and morals, later cases had recognized regulations requisite for 'public convenience' and 'general prosperity' as promoting the general welfare." *Pierro v. Baxendale,* 20 N. J. 17, 118 A. 2d 401, 407 (1955).

If we were to accept the appellant's contention as the law, "then the whole plan and scheme of Zoning must be cast aside because . . . [no zone could be preserved from invasion] just so long as it could be shown that the proposed use would not adversely affect to any reasonable extent the public health, safety or morals. The statutory law of zoning would be replaced by the law of nuisance. . . .". . . .

". . . If we were to hold that the Zoning Ordinance . . . was unconstitutional as applied to the appellant's property, then we would throw every zone open to prohibited uses . . . and we would in effect put an end to all zoning." *Swade v. Zoning Board of Adjustment of Springfield Township*, 392 Pa. 269, 140 A. 2d 597 (1958). Hence, as we held in the *Swade* case, and now reaffirm, considerations of the general welfare alone support the constitutionality of zoning ordinances.

. The broad scope of the concept of general welfare is illustrated by the decision of the United States Supreme Court in *Berman v. Parker*, 348 U. S. 26 (1954). The plaintiff in that case challenged the condemnation of his land under the District of Columbia Redevelopment Act as violative of the "due process" clause of the Fifth Amendment to the Federal Constitution. A unanimous Court recognized that: "The power of Congress over the District of Columbia includes all the legislative powers which a state many exercise over its affairs.". . . : "We deal, in other words, with what traditionally has been known as the police power." 348 U. S. at 31-32. [Subject to constitutional limitations the legislature, as the main guardian of the public needs, may declare the public interest and act in furtherance thereof]. "This principle admits of no exception merely because the power of eminent domain is involved." 348 U. S. at 32. "The concept of the public welfare is broad and inclusive. [citations omitted]. The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled." 348 U. S. at 33. "If those who govern the District of Columbia decide that the Nation's Capitol should be beautiful as well as sanitary, there

is nothing in the Fifth Amendment that stands in the way." 348 U. S. at 33.

If the legislature has the power to compel a property owner to submit to a forced sale for the purpose of creating an attractive community, it has the power to regulate his property for such objectives. *Accord: Chicago, B. & Q. Ry. v. Illinois,* supra, 200 U. S. at 592-593.

Not only is the preservation of the attractive characteristics of a community a proper element of the general welfare, but also the preservation of property values is a legitimate consideration since "[A]nything that tends to destroy property values of the inhabitants of the . . . [community] necessarily adversely affects the prosperity, and therefore the general welfare, of the entire . . . [community]." *State ex rel. Saveland Park Holding Corp. v. Wieland,* 269 Wis. 262, 69 N.W. 2d 217, 222 (1955).

"We are satisfied that at long last conscientious municipal officials have been sufficiently empowered to adopt reasonable zoning measures designed towards preserving the wholesome and attractive characteristics of their communities and the values of taxpayers' properties." *Pierro v. Baxendale,* 20 N. J. 17, 118 A. 2d 401, 408 (1955). See also *West Hartford Methodist Church v. Zoning Board of Appeals of the Town of West Hartford,* 143 Conn. 263, 121 A. 2d 640, 643 (1956); *Opinion of the Justices,* 333 Mass. 773, 128 N.E. 2d 557 (1955); *Sullivan v. Anglo-American Investment Trust, Inc.,* 89 N. H. 112, 193 Atl. 225, 227 (1937); *Fischer v. Bedminster Township,* 11 N. J. 194, 93 A. 2d 378 (1952). *Cf. Kerr's Appeal,* 294 Pa. 246, 250, 144 Atl. 81 (1928) (aesthetic values may be considered in connection with the question of general welfare).

In the case before us the appellant has introduced no evidence whatsoever tending to show that the application of the zoning ordinance to her property would not promote the general welfare of that part of the community which is affected thereby. We are unable to say that requiring the appellant to use her property in conformance with the provisions of the zoning ordinance would not serve to preserve the attractive characteristics of the community and the property values therein. Therefore, the attack upon the reasonableness of the application of the ordinance to appellant's property must fail.

The appellant finds discrimination in the provisions of the ordinance which establish a "sliding-scale" of residential districts which permit one, two and multiple-family dwellings. Indeed, the appellant points out that only 200 feet away from her property the ordinance permits apartment houses. If single-family dwellings promote the public welfare, so her argument runs, why are not all residential districts so zoned? The answer is that no one type of housing satisfies the varied needs of a community. Some families prefer the conveniences of an apartment, others may like the efficient living facilities of a modern duplex, and still others might choose the snugness of a row house. Each type of residential development requires different supplies of public facilities. But since the facilities available vary from one area of a community to another the legislative body may permit only the type of housing for which facilities in a particular district are adequate. It is therefore apparent that the general welfare is promoted by a zoning ordinance which allocates particular types of housing to specific residential areas.

No weight can be given to the fact that appellant's property is close to an area zoned to permit multiple-

family homes. If we grant the community the right in the first instance to zone areas for different uses, then it is a matter of accident that appellant's property happens to be one which is located near the zoning boundary line of a particular district.

Finally, we consider appellant's contention that the application of the ordinance to her property is confiscatory and represents an unconstitutional taking of her property without compensation therefor. Appellant's evidence on this issue amounts to no more than that she is prevented by the ordinance from putting her property to its most profitable use. This is not a constitutional objection. *Hadacheck v. Sebastian,* 239 U. S. 394 (1915).

Order affirmed.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE BELL:

The sole question in this case is whether the lower Court abused its discretion in failing to grant a variance. If I had been a member of the board of adjustment or of the Court below, I would have voted to grant a variance under the authority of *Michener Appeal,* 382 Pa. 401, 115 A. 2d 367, which correctly enunciates the applicable law, pages 406-407: "The law is well established that a variance may be granted only where a property is subjected to a hardship *unique or peculiar to itself* as distinguished from one arising from the impact of the zoning regulations on the entire district."

However, I cannot say that the lower Court committed a manifest abuse of discretion and therefore I must concur in the result reached by the majority opinion.

All the rest of the majority opinion which deals with the constitutionality of the ordinance as applicable to petitioner's property, is unnecessary and is obiter dicta. It proclaims a doctrine which is in violation of all the fundamental rights guaranteed by the Constitution, namely, *unlimited* police power with its derivative omnipotent and all-exclusive "general welfare."

I vehemently dissent from this part of the opinion for the reasons set forth at length in my dissenting opinion in *Bilbar. Construction Co. v. Easttown Township Board of Adjustment*, 393 Pa. 62.

Mr. Justice MUSMANNO and Mr. Justice BENJAMIN R. JONES join in this concurring and dissenting opinion.