## Lechner Appeal

*Jeffrey F. Bahls,* for appellant.

*Maurice Levin,* for Commonwealth.

BECKERT, J., June 1, 1972.—This appeal is from the revocation of the operator's license of Ali Lechner (appellant) by the Secretary of Transportation. A de novo hearing was held thereon and we make the following

### FINDINGS OF FACT

1. Appellant resides at R. D. No. 1, Coopersburg, Bucks County, Pa., and for more than five years has been a licensed operator of motor vehicles.

2. On June 3, 1971, appellant pleaded guilty before this court to charges of possession and sale of narcotic drugs, i.e., marihuana.

3. No testimony was given at the time of appellant's guilty plea, or at the time of the instant hearing, to show any relationship or connection between his violation of the criminal statute under which he was prosecuted and use and operation of a motor vehicle.

4. Testimony was attempted to be elicited from appellant as to whether he was "in the habit of carrying marihuana in your car," but this question was objected to by counsel for the Commonwealth and the objection sustained by the court.

5 After receipt by the Secretary of Transportation of the court's certificate from the clerk of court as to the above plea of guilty, the secretary, on August 24, 1971, revoked appellant's motor vehicle operator's privileges for one year, effective August 24, 1971.

6. The one-year revocation of operating privileges was grounded upon the Act of April 29, 1959, P. L. 58, sec. 616, as amended by the Act of December 17, 1969, P. L. 376, and more specifically subsection 4 thereof, 75 PS §616(4), "Unlawful possession or sale of narcotics."

7. No hearing was afforded to appellant prior to revocation of his operating privileges to examine the propriety of that action by the Secretary of Transportation.

8. The within appeal was filed on September 1, 1971, and made a supersedeas.

## DISCUSSION

By this appeal, appellant raises two constitutional arguments. One, that the order suspending his motor vehicle operator's privileges is unconstitutional, unreasonable and abuse of discretion on the part of the Secretary of the Department of Transportation and the Director of the Bureau of Traffic Safety. Appellant contends that section 616 of The Vehicle Code, supra, under which act his operator's privileges were withdrawn, is unconstitutional on its face as being violative of procedural due process and, two, further contends that subsection 616(a)(4) of the same act is unconstitutional as being a wrongful exercise of the Commonwealth's police power.

In dealing with the first advanced argument, we find that appellant's primary reliance is placed on two relatively recent Federal court decisions. The first is Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed. 2d 90 (1971), wherein the court pointed out that once licenses to operate a motor vehicle are issued, their continued possession may become essential in the pursuit of a livelihood and that, therefore, suspension of issued licenses constitutes State actions that adjudicate important interests of the licensees. The Supreme Court therein concluded that regardless of whether the entitlement of an individual to a license is denominated a right or privilege, and except in "emergency situations," due process requires that when a State seeks to terminate such an interest, it must afford

"notice and opportunity for hearing appropriate to the case, before the termination becomes effective": Id., at page 542. We can at this juncture safely say that we find nothing of record in the instant case to suggest that the "emergency situation" exception to the general rule would here be applicable.

The Bell holding was thereafter followed in Reese v. Kassab, 334 F. Supp. 744 (1971), a case concerned with the suspension of operating privileges under the Pennsylvania point system. The holding was that the Pennsylvania point system, whereby points are assessed upon conviction of specific motor vehicle violations and an operator's license is suspended when a total of 11 points is accumulated, denied the applicant due process of law insofar as his license was suspended without prior notice and hearing, this being so even if the convictions on which the points were assessed could not be contested and despite the contention that a hearing was not required because the suspension was not discretionary. Reese followed the Bell view that the right-privilege distinction heretofore accepted should be replaced by an examination of whether there is involved State action that adjudicates important interests of the licensee.

Whether the present appellant is entitled to rely on the Reese v. Kassab case depends on whether the revocation section 616 of The Vehicle Code is analogous to the point system section, 619.1 of The Vehicle Code. We find that it is. Both sections provide for summary revocation of operator's privileges and neither provides for a hearing procedure to rectify error. It is not the underlying crimes or offenses upon which the revocation of operator's privileges may be based that is important; it is the resultant revocation of a license without opportunity for a hearing *beforehand* which has been challenged as being in violation of

procedural due process. Therefore, any statute mandating that result for whatever reason one might care to imagine, would be subject to the same rationale as set forth in the recent Bell decisions. We feel bound to follow these decisions, holding that an operator's license represents a right or privilege which is not to be taken away without that procedural due process required by the fourteenth amendment. This being so, even though Bell and Reese obviously were based upon substantially different sets of facts; Bell concerning itself with the requirements of due process as it related to financial responsibility statute and Reese as discussed for suspension under the point system.

To be repetitious, since suspension under the point system section 619 of The Vehicle Code and revocation under section 616 thereof are both mandatory and nondiscretionary and, hence, neither section makes any provision for a hearing to be afforded prior to withdrawal of motor vehicle operator's privileges, a holding in the instant case that no such hearing is necessary to satisfy due process requirements would be an affront to those cited cases.

The teaching set down in Reese is that before an operator's license can be suspended by the secretary under the terms of the Pennsylvania point system, there must be notice and opportunity for hearing before the action becomes effective. Relating this requirement to section 616, we are immediately confronted with the argument that before any revocation can be accomplished under this section, there must necessarily have been provided to appellant notice and at least the opportunity for hearing, upon the question of his guilt in having committed one or more of the crimes specifically enumerated therein. We must, therefore, determine only whether such notice or opportunity for hearing with respect to the underlying

offense is sufficient to meet the constitutional requirement as pronounced in Reese v. Kassab, supra. We find that it has not been so afforded to appellant.

In pointing out the need for an independent administrative hearing on the propriety of the suspension itself, the majority of the district court said in Reese, at page 747:

". . . even if the convictions cannot be contested, [and certainly here the administrative hearing would not be a re-trial of the narcotics charge] there still remain the possibilities, among others, that the convictions were those of another person with the same name; that the fines and costs were paid on an information at variance with that for which the minor judiciary entered a conviction . . . ; that the points were improperly calculated; that credits were wrongfully withheld; or that there were errors on the report of conviction form. In none of these instances is there a provision for a hearing before suspension, even though notice of the assessment of points is given. Notice without opportunity to rectify error obviously is not sufficient.

"As an indication that an administrative hearing before suspension would not be a novel or undue burden on the Commonwealth—even if that were material—we point out that 75 PS §618 (b) requires that a hearing be held *before* suspension in certain enumerated situations, some of which involve mandatory revocation in the event of conviction in the criminal courts."

Therefore, even in the vast majority of actions under section 616, there would be no necessity for the granting of a hearing to review the propriety of the administrative act of mandatory revocation by the secretary and despite the procedural complexity and added expense that such hearings would impose upon the

Commonwealth, we must join with Judge Rosenberger who, in his concurring opinion, reluctantly supported the ultimate conclusion reached by the Reese majority": . . . only on the remote possibility that a summary suspension might inadvertently deprive an innocent person of his operator's license without due process of law": page 752.

Further, we agree with appellant's statement on page 4 of his brief that a finding that section 616 is unconstitutional would not bar the secretary from removing from the highways an operator found guilty of one of the offenses enumerated therein. Mandatory revocation of a driver's license under this section and suspension under section 618 may be imposed for the same offense: Upsey v. Secretary of Revenue, 193 Pa. Superior Ct. 466 (1960); Commonwealth v. Hornberger, 41 Northumb. Leg. J. 84 (1969). Therefore, if the secretary proceeded for suspension under section 618, the holding of the Farr Automobile License Case, 55 D. & C. 2d 126, 21 Bucks L. Rep. 433 (1971), which shall be discussed hereafter, would be applicable. Thus, we conclude that a practical and constitutional alternative is provided within the statutory framework.

We do not feel that any Pennsylvania cases brought to our attention, decided after the Reese case, cure the problem presently before us. The holding in Department of Transportation v. Hosek, Jr., 3 Com. Ct. 580 (1971), was to the effect that article V, sec. 9, of the Pennsylvania Constitution and the Administrative Agency Law of June 4, 1945, P. L. 1388, 71 PS §1710.1, by the addition of section 47, 71 PS §1710.47, now vested in a defrocked licensee the right of appealing his revocation of license to the common pleas court in the county in which the operator resides. This case, however, does not comport with the requirement of

a hearing *before* revocation. As previously noted, the Farr Automobile License Case, supra, would handle the suspension situation. However, we find our present case to be distinguishable from that case as Farr dealt with an appeal from a suspension of operative privileges, rather than revocation, and appellant in Farr had the right not only to a hearing de novo under section 620 of the code, but, in addition thereto, an administrative hearing under section 618(h). We agree with the holding of Farr that these procedural rights, coupled with the supersedeas order "afford appellant full and adequate procedural due process protections": Page 436. However, when dealing with a revocation under section 616, no administrative hearing is afforded to the licensee.

Although, as previously alluded to, we are forced to concede that in almost every case of this sort a hearing prior to revocation would serve no valid purpose other than putting the Commonwealth to the added burden of providing a hearing which would disclose that the person whose license they seek to revoke was the same person who was convicted or entered a plea of guilty to possession or sale of narcotics, we are, nevertheless, bound to afford the protection of constitutional due process to those few innocent individuals who could have their license withdrawn as the result of possible errors which are not unheard of in the bureaucratic society in which we live. For that reason, we reluctantly hold that the revocation of the appellant's operating privileges under section 616 of The Vehicle Code, without his having been afforded an opportunity for a hearing, at which the propriety of such revocation could be questioned, was improper for its failure to comply with constitutional due process requirements.

Turning to the second propounded question, we

find appellant to also be on sound ground. In essence, appellant challenges section 616(a)(4) of The Vehicle Code and raises the contention that there is no reasonable basis for that section in that it bears no substantial relation to the object which the legislature was seeking to attain, and that it is arbitrary and therefore violative of the constitutional guarantee of equal protection.

There is no doubt but that the legislature has power over the highways of this Commonwealth and, therefore, is vested with the power and duty to supervise, control and regulate their use. By virtue of the inherent police power of the State, the legislature may, therefore, regulate the manner and circumstances under which and by whom automobiles may be operated within its boundaries: Commonwealth v. Funk, 323 Pa. 390 (1936). Also, there seems to be no question but that the relevant statutory section 616(a)(4) exists for the promotion of public safety in that it is designed to exclude certain persons from the highways, thereby protecting the lives, liberty and property of the Commonwealth's citizens.

Where the validity of legislation has as its foundation the exercise of the police power of the State, the classification or distinction made in the exercise of that power cannot be arbitrary, or else it can be held violative of the constitutional guarantee of equal protection of the laws: Atchison, Topeka & Santa Fe Co. v. Vosburg, 238 U.S. 56 (1915); Empire Box Corp. of Stroudsburg v. Chestnut, 54 D. & C. 162 (1945), affirmed per curiam by the Supreme Court in 352 Pa. 418 (1945). The police power of a State embraces and allows regulations to promote the public health, safety and morals, but laws which purport to be an exercise of the police power must not be unduly oppressive or patently beyond the necessities of the case and the

means which they employ must have a real and substantial relation to the object sought to be obtained: Best v. Zoning Board of Adjustment, 393 Pa. 106 (1958).

We are fully cognizant that the actions of the Secretary of Transportation, as well as the statute itself, are presumed to be constitutional and a heavy burden rests upon appellant to establish that they are not: Upsey v. Secretary of Revenue, supra; Loomis v. Philadelphia School District Board of Education, 376 Pa. 428 (1954); Lutz v. Armour, 395 Pa. 576 (1959).

Our attention has been directed to the case of Commonwealth v. Weiner, 42 D. & C. 2d 164 (1967), where the secretary's suspension of defendant's operator's license under section 618(a)(1) was reversed. The Weiner case held that the entry of a plea of guilty to a violation of the Drug, Device and Cosmetic Act of September 26, 1961, P. L. 1664, standing alone, was not sufficient to support a finding that defendant was incompetent to operate a motor vehicle. This conclusion was reached upon a total lack of evidence that the licensee had been affected by the drug in any way, or that he ever operated or attempted to operate a vehicle on the occasion of his admitted use of the drug "cheracol." The only information the court had before it was supplied from the indictments, which was to the effect that he had procured this drug illegally, had it in his possession and had used it at some unspecified time in the past. The record was completely barren of any evidence as to the amounts and frequency of his consumption of the drug and as to the effect, if any, that it had on his system. In reality, there was more presented to the Weiner court than we have in the instant case before us. At least in Weiner the indictment indicated a use of the drug,

where in the case at hand the present appellant is charged with only possession and sale.

The Weiner case then held that under those circumstances a bare guilty plea without more was not sufficient evidence upon which to find appellant incompetent to operate a motor vehicle. Judge Riley stated "There are many types of drugs and many types and degrees of effects, and there are many manners and means of violating the drug and cosmetic act with no relation whatever to the operation of automobiles": Page 166.

The statutory provisions construed in the Weiner case and in the case before us are substantially the same in principle. Each concerns itself with removing from the highway persons deemed incompetent to operate motor vehicles. As previously stated, this appeal closely resembles that of Weiner and that our present appellant pleaded guilty to charges of possession and sale of narcotic drugs (marihuana), and there was no evidence presented at his guilty plea hearing or at the hearing de novo before us which showed any relationship or connection between his admitted violation of the criminal statute and his ability to operate a motor vehicle without endangering the public safety.

If the statutory subsection now under consideration was worded so as to include unlawful *use* of narcotics, rather than merely possession and sale, we might be able to find some rationale, some justification for revoking appellant's operator's privileges for safety reasons. However, the words of section 616(a)(4) are free from ambiguity and we are unable to construe them in such a way as to relate them to appellant's competency to drive, which we have to do in order to find the statute is not arbitrary on its face.

The record does not indicate that appellant was

charged with having used a motor vehicle as an instrumentality in the furtherance of his unlawful narcotics activities. To the contrary, the record demonstrates that he was not engaged in the use of an automobile at the time and when testimony was attempted to be elicited from appellant as to whether or not he was in the habit of carrying marihuana in his car, this question was objected to by counsel for the Commonwealth and the objection sustained. We can only assume that the objection was on the theory that whether or not an automobile was involved was not relevant in this type of proceeding, as the section under which the revocation took place did not make that fact a prerequisite. Therefore, even if the Commonwealth could somehow read section 616(a)(4) as by implication encompassing those situations where a motor vehicle is employed in the commission of a crime, we would still have no proof to support such an interpretation. In Smith Motor Vehicle Operator License Case, 204 Pa. Superior Ct. 379 (1964), the indictment to which the operator pleaded guilty did not specifically charge the use of a motor vehicle in the commission of a felony [burglary] and the court made no specific finding on this point. The court, in Smith, speaking through Judge Woodside stated that the authority of the Secretary of Revenue to revoke under such circumstances is at least questionable and at page 383 thereof Judge Woodside said: "It would seem also that the licensee should be entitled to *a determination* of the fact either in the criminal court having jurisdiction over the burglary or before the Secretary of Revenue or some other place designated by the legislature."

There is also the relatively recently reported case of Commonwealth v. Harvey, 53 D. & C. 2d 783 (1971). This case resulted in the setting aside of a suspension

by the Secretary of the Department of Transportation because neither at the administrative level nor at the hearing de novo did the Commonwealth produce evidence that there was a reasonable possibility of judgment being entered against the defendant motor vehicle operator. We conclude, therefore, that our present case, because of its factual similarity to Weiner and consistent with the holding of Harvey should be decided on the same considerations and that since the record here is devoid of evidence showing use of narcotics by appellant which would tend to reflect his incompetency to operate a motor vehicle, it is, therefore, impossible for us to find any real and substantial relation between the classification set forth in the statutory subsection under which his license was revoked and the object sought to be obtained by the revocation. We, therefore, enter the following

## ORDER

And now, June 1, 1972, the within appeal from the revocation of the operator's license of Ali Lechner is hereby sustained and the order of the Secretary of Transportation suspending the operator's privileges of the appellant is vacated, overruled and reversed.