Anstine, Appellant, *v.* Zoning Board of Adjustment.

34

Argued November 20, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Harry L. McNeal, Jr.*, with him *G. Thomas Miller*, and *Bailey, Pearson, Miller & Bolton*, for appellants.

*Raymond L. Hovis*, for appellee.

*W. Byron Sorrell, John Breckinridge*, and *White, Sorrell & Williamson*, and *Bailey, Pearson & Bolton*, for amicus curiae.

*Frederick H. Bolton, Gerald T. Sajer*, and *Bailey, Pearson & Bolton*, for amicus curiae.

Opinion by Mr. Justice Benjamin R. Jones, April 30, 1963:

· This is an appeal from an order of the Court of Common Pleas of York County which affirmed a decision of the York Township Zoning Board of Adjustment (Board) refusing to grant to Dale D. Anstine and Vivian D. Anstine (appellants) a variance from the terms of the York Township Zoning Ordinance of 1960.

The appellants purchased approximately two acres of land in York Township on December 19, 1959. At the time of purchase, the land was improved with a two-story block building, formerly used as a chicken house and hog pen. On February 2, 1960, York Township (Township) adopted a zoning ordinance, effective February 15, 1960, designating the zone in which appellants' land was located as an "R-Residential" district. This ordinance prohibited the location of trailers[1] within an "R-Residential" district except in an authorized trailer camp.

On February 27, 1960, the appellants placed on their land a mobile-home or trailer and used it as a dwelling house. They applied to the Board on October 24, 1961 for a variance to continue to use and occupy the trailer or mobile-home as a residence and to improve it by placing it on a concrete foundation and adding to its exterior a patio, awning and other decorative features. A hearing was held and testimony was taken. The variance was refused because, according to the Board, appellants had failed to show that the ordinance would work an unnecessary hardship upon them. Appellants then appealed the Board's decision to the Court of Common Pleas of York County and that court, without taking testimony, sustained the refusal of the variance

---

[1] The terms "trailers" or "mobile-homes" are used interchangeably in this opinion.

and the validity of the ordinance. From that order this appeal has been taken.

The sole issue before this Court is whether this zoning ordinance operates in such an arbitrary, capricious, discriminatory or confiscatory manner so as to unconstitutionally deprive the appellants of the use of their property. Section 704.1 of the York Township zoning ordinance of 1960 states: "Insofar as the provisions of this ordinance are concerned, *within an R-Residential District a trailer shall be considered as a particular type of dwelling use,* and shall be located only within a permitted trailer camp. *In all other districts, a trailer shall be considered as a single family detached dwelling,* and it shall conform to all regulations applicable to a single family dwelling for the district in which it is located." (Emphasis supplied) Section 301.1 of the ordinance sets forth the use regulations within an R-Residential district as: "A Building may be erected or used, and a lot or land may be used or occupied for any of the following purposes, and no other: 1. Single Family Detached or Semi-Detached Dwelling." The effect of such ordinance provisions is to permit the location of a trailer or mobile home on single lots anywhere within the Township, except in an "R-Residential" district where they may be located only in trailer camps. Trailer camps may be located anywhere in the township, provided certain conditions are met.

The burden of proving clearly and unmistakably the unconstitutionality of a legislative enactment is upon the person so asserting: *Best v. Zoning Board of Adjustment,* 393 Pa. 106, 141 A. 2d 606; *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A. 2d 587; *Loomis v. Philadelphia School District Board of Education,* 376 Pa. 428, 103 A. 769; *Flynn v. Horst,* 356 Pa. 20, 51 A. 2d 54. Accompanying this burden is the rule that ". . . where the constitutionality of zoning ordinances has been attacked, we have presumed that the munici-

pal [or township] legislative body acted with purpose to serve the public welfare and that all intendments are in favor of their action." *Bilbar Construction Co. v. Easttown Twp. Board of Adjustment*, 393 Pa. 62, 71, 141 A. 2d 851; *Liggett's Petition*, 291 Pa. 109, 139 A. 619; *Whitpain Township v. Bodine*, 372 Pa. 509, 94 A. 2d 737. The burden of proof in an attack on the constitutionality of a zoning ordinance, although heavy, can be maintained. In *Archbishop O'Hara's Appeal*, supra (p. 57), quoting from *Lord Appeal*, 368 Pa. 121, 81 A. 2d 533 and *White's Appeal*, 287 Pa. 259, 134 A. 409, it was stated (pp. 57, 58) : " ' ". . . all property is held in subordination to the right of its reasonable regulation by the government *clearly necessary* to preserve the health, safety or morals (or general welfare) of the people . . . . There is one matter that is quite certain, *the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety, and general welfare* . . ." ' " In *Schmalz v. Buckingham Twp. Zoning Board of Adjustment*, 389 Pa. 295, 132 A. 2d 233, the Court held that it was the duty of a court, before which the reasonableness of a zoning ordinance has been questioned, to determine whether that ordinance constituted a valid exercise of the police power. While the courts are bound to accept the judgment of the legislative body concerning the necessity for zoning classifications, however, the courts may inquire as to whether or not a particular zoning classification bears a substantial relationship to the public health, safety, morals or general welfare. *Bilbar Construction Co. v. Easttown Twp. Board of Adjustment*, supra; *Best v. Zoning Board of Adjustment*, supra; *Tidewater Oil Co. v. Poore*, 395 Pa. 89, 149 A. 2d 636.

Section 101 of the township ordinance provides, inter alia : "This ordinance is enacted for the purpose of

promoting the health, safety, morals and the general welfare of the inhabitants of York Township . . . ." Included *specifically* among the objects of this ordinance are the elimination of conditions inimical to the community's health and safety, the encouragement of the most appropriate use of land, the conservation of property values and aesthetic considerations.

The burden was on appellants to show that the maintenance of their mobile home, improved as proposed, would not be inimical to the "health, safety, morals and general welfare of the inhabitants of York Township . . . ." The record shows that appellants' mobile home is 8′ wide and 41′ long and has, accordingly, 328 square feet of living space; a housing construction expert testified that the average conventional dwelling house contains 720 square feet, but he classified appellants' dwelling as "a small home, but not an extremely small one." The interior height of their dwelling is 7′ 2″ and there is a structural steel frame with an exterior siding of aluminum; an expert witness compared the construction of the frame of appellants' dwelling to that of a conventional home and declared them to be structurally similar. Likewise, the interior plywood covering on the walls and floor of appellants' dwelling and the insulation between the exterior covering and the interior covering are basically similar to the building materials which would be used in a conventional dwelling house. The living space within the mobile home consists of a living room-dining room, a kitchen with a double sink, hot and cold running water, a four-burner gas stove, a bathroom with a regular size bath tub, lavatory, commode and hot and cold running water. Appellants' two children sleep in the 8′ x 8′ bedroom and appellants sleep on a roll-out bed in the adequately furnished living room. The mobile home is equipped with city water facilities, electricity, telephone service, a septic tank located beneath

the mobile home and a fuel oil heating unit and it presently rests on concrete blocks and is surrounded by two acres of land. Appellants have specifically requested the Township for permission to remove the wheels presently attached to the undercarriage of the mobile home and to place the structure on a concrete block foundation. Thus, the mobile home will be rendered immobile and will be permanently affixed to the block structure. A 12′ x 15′ cement patio with a 2′ wall constructed on either side and an awning to cover the patio is planned. The record shows that this structure could be moved after these improvements are effected only with the same degree of difficulty and harm to the structure as would accompany the moving of a conventional dwelling house.

Certain conclusions flow from this evidence. The question of what best serves the public interest is primarily a question for the decision of the appropriate legislative body in a given situation, but whether a zoning ordinance operates in an arbitrary, capricious, discriminatory or confiscatory manner as to the property in question calls for judicial determination: *Bilbar Construction Co. v. Easttown Twp. Board of Adjustment,* supra. In our opinion, a review of the record shows that the refusal to grant appellants permission to improve their mobile home is arbitrary and discriminatory. Only single family dwellings are allowed within the R-Residential District and, if appellants are permitted to go forward with their improvements, the resulting structure clearly would be a single family dwelling, albeit a small dwelling, within the definition of the ordinance. Their plans involve the removal of the mobile home's undercarriage to which the wheels are attached and the bolting of the structure to a concrete block foundation and the proposed addition of a concrete patio covered by an aluminum awning clearly creates a *fixed* rather than a *mobile* structure. The

record shows that the structural construction of this home differs from that of a conventional home only to the extent that it is of a smaller scale. The degree of difficulty in physically moving the structure is the same. Setting aside for the moment all niceties of definition, appellants' request envisions the maintenance of a permanent and immobile house within this residential area.

In *every other zoned district* in York Township, a trailer or a mobile-home is to be considered a single family dwelling house merely by fiat of the ordinance's definition. It is arbitrary, therefore, to deny this status to a mobile home in an R-Residential area which in fact is no longer able to be drawn by a vehicle and to a mobile-home rendered structurally immobile. There is in this ordinance no restraint on the use of trailers or mobile-homes other than by way of definition and there is established no minimum square footage for all single family dwelling houses as has been held to be a valid zoning standard in this Commonwealth: *Lower Merion Township v. Gallup,* 158 Pa. Superior Ct. 572, 46 A. 2d 35. On many occasions, a mobile home has been held, under the circumstances therein existing, to be a "dwelling" by the courts of this Commonwealth: *Palumbo Appeal,* 166 Pa. Superior Ct. 557, 72 A. 2d 789; *Commonwealth v. McLaughlin,* 168 Pa. Superior Ct. 442, 78 A. 2d 880; *Commonwealth v. Helmuth,* 73 Pa. D. & C. 370; *Hunter v. Richter,* 9 Pa. D. & C. 2d 58; *Hickory Township v. Wooddell,* 4 Mercer Co. L. J. 282. In the case at bar, we deem it most arbitrary to apply the classification of "trailer" to a structure which, when improved, will not be *in fact* a "trailer" as defined, expressly or impliedly, by the ordinance or by common sense.

The Township was presumptively acting within its delegated power when it classified mobile-homes differently than conventional homes. The record before us,

however, does not show, directly or indirectly, any substantial reason for this differentiation in classification and the evidence shows clearly a condition free from health or safety hazards. The facilities in this home and its physical structure are clearly adequate and any dangers inherent in this dwelling would most likely be found in a conventional home of the same dimensions. If this is so, the zoning ordinance should apply to all dwellings of the same or similar size, irrespective of any differences in basic construction. The record before us does not show that the improvement of appellants' dwelling will cause greater traffic congestion in York Township nor is there any showing that it will create a greater risk of fire danger than conventional dwellings. Nor does it reveal the contemplated performance of noxious activities on the property which would not be subject to restraint under the law of nuisance. The instant record, patently, does not show that the maintenance of this mobile home permanently affixed to the realty will be inimical in any manner to the health, safety, or morals of its occupants or to the possessors of adjoining property in an "R-Residential" District. This Court may not speculate as to the Township's reasons underlying this special classification but, in the absence of any evidence thereof, we are bound to hold that this classification as it pertains to appellants' requested improvement is arbitrary and discriminatory and unrelated to the police powers of the Township legislative body.

Assuming that this zoning classification is unrelated to standards generally considered, such as the public health, morals or safety, we must consider its relation to the "general welfare" of York Township. The only basis upon which the Township could justify the exclusion of mobile homes from this area on the ground of "general welfare" would be that the presence of this mobile home would aesthetically injure the

neighborhood or would lower the values of adjoining properties. However, *on the posture of this record,* neither element need receive our consideration. There is not a scintilla of evidence of an unfavorable aesthetic impact of a mobile home on this area while there is evidence that the location of this mobile home will *enhance* the value of the surrounding property.

The Township argues that there is a presumption that the ordinance in question was enacted to preserve the beauty and property values of York Township. Thus, the Township would have us *presume* that the style or design of a mobile home per se detracts from the aesthetic characteristics of the community and, accordingly reduces neighboring property values and that a conventional dwelling house, no matter its unattractiveness, will not have the same effect. This is clear error. We are bound to look no further than the record before us. This record does not reveal whether appellants' requested improvement will or will not enhance the aesthetic characteristics of the neighborhood and the only evidence relating to the concept of aesthetics is the testimony of a realtor to the effect that the improvement of appellants' dwelling would hide an existing concrete block structure used as a hobby shop and *to that extent* aesthetically *enhance* the area. An expert testifying for appellants stated that the improved structure would increase the value of appellants' property and that it "will tend to make it [the immediate area] more of a residential area". In effect, this testimony amounted to an expert's *opinion* of the favorable impact of *this* property use on this immediate neighborhood. A party protesting the permit testified that he had *heard* that the value of adjoining properties had depreciated $2,000 since the placing of the mobile home on appellants' property. This is not competent evidence that the improvement of such mobile home will adversely affect the property values of the entire com-

munity or the adjoining properties. See: *Best v. Zoning Board of Adjustment,* supra, p. 117. The absence of any evidence on this record relating to the preservation of aesthetic characteristics removes this element from our consideration as a proper exercise of the Township power to promote the general welfare.[2]

It has often been held that zoning ordinances must be enacted in accord with a comprehensive plan whereby the municipality may develop in an orderly manner (*Eves v. Zoning Board of Adjustment,* 401 Pa. 211, 164 A. 2d 7) and that the provisions of an ordinance must be pertinent to the attainment of the objectives of the plan or be invalid (*Whitpain Township v. Bodine,* supra; *Archbishop O'Hara's Appeal,* supra; *Menger v. Pass,* 367 Pa. 432, 80 A. 2d 702; *Swade v. Springfield Township Zoning Board of Adjustment,* 392 Pa. 269, 140 A. 2d 597; *Schmalz v. Buckingham Township Zoning Board of Adjustment,* supra). A reading of the York Township ordinance of 1960 shows that the Township legislative body envisions that in the future the designated "R-Residential" district will remain agricultural with single family detached or semi-detached dwellings. In *Schmalz v. Zoning Board of Adjustment,* supra, at p. 302, it was stated: "We must determine the reasonsableness of the regulation as it applies to conditions *now existent."* The record shows that the area presently surrounding appellants' property is a conglomeration of commercial, agricultural and residential properties. To the east and south of appellants' land is farm land upon which corn and wheat are grown. To the west are three properties: (1) land improved with a single family dwelling and truck garage upon which a baking business is conducted; (2) land upon which a dwelling is located together with a parking lot for

---

[2] The instant ruling in no wise determines that aesthetics is or is not a factor in zoning.

trucks and farm equipment upon which ponies are raised and a landscaping business conducted; (3) land upon which a dwelling is located, two-story chicken coops housing 6,000 chickens, a stable for horses and ponies together with areas for pasturing ponies and sheep. The conclusion is inescapable that the township ordinance as it affects appellants' property and environs is attempting to develop an agricultural and residential area out of what is presently a *commercial,* agricultural and residential area. To argue that the improvement of appellants' mobile home will lower the character of the neighborhood by its nonconformance with adjoining properties is to argue against the physical facts revealed by this record.

We are of the opinion that Section 704.1 of the York Township Zoning Ordinance of 1960 places an unreasonable, arbitrary and discriminatory restriction on appellants' use of their property. The record does not show that this ordinance as it relates to this specific property is a proper exercise of the Township's power to regulate, through zoning, in protection of public health, morals and safety or general welfare of the community.

The order of the court below is reversed.

----

DISSENTING OPINION BY MR. JUSTICE COHEN:

The majority has held that insufficient evidence was presented to demonstrate that the zoning classification herein involved bears a substantial relationship to the public health, safety, morals, or general welfare of the community. I am fearful that this holding may be misconstrued to mean that under no circumstances can a community regulate the placement and existence of trailer homes. The majority opinion points out that no competent evidence was produced to show that the placement of this trailer had any deleterious effect up-

on the aesthetics of the community, or that it had any unfavorable impact upon property values. Since we should only declare the application of a statute unconstitutional when it is absolutely necessary to do so, I would remand the proceedings to the court below to hear additional evidence. Cf. *Robinson Township School District v. Houghton,* 387 Pa. 236, 128 A. 2d 58 (1956); *Altieri v. Allentown Retirement Board,* 368 Pa. 176, 180, 81 A. 2d 884, 886 (1951).

I dissent.