## Commonwealth v. Ford

*Sherman H. Siegel*, for plaintiff.
*William C. Porter*, for defendant.

SWEET, P. J., October 31, 1965.—Homer L. Ford owns a travel trailer described in the trade as a

"Clinch" made by Norris Homes, Inc., New Tazewell, Tenn. It is a very small, two wheeled thing containing a gaucho bed, dinette, closet, sink, etc., designed to be pulled by an ordinary car. Mr. Ford does not live in this vehicle, but does park it on his premises in between hunting trips, fishing trips and other excursions. This is obviously a piece of personal property, and it is in no way affixed to realty; i.e. no blocks, no foundation, no electrical connection, water connection, sewerage, or anything of that sort.

The Township of South Strabane contends that this falls within a prohibited use under the Zoning Ordinance enacted June 7, 1960, sec. 65, having a definition of "Trailer Coach, Mobilehome", which would include Mr. Ford's travel trailer. Section 3 (2) squarely forbids the parking of such a thing in any district for 48 hours or longer. It was agreed at the bar that the intermittent, periodic retention of this object by Mr. Ford on his lot and ground near his home was "parking", and that the ordinance, as drawn, forbade the activities which Ford conducted.

The question for decision can be defined as follows: Can this zoning ordinance constitutionally forbid the individual to have and possess a mobile travel trailer on his residence premises for periods of more than 48 hours? It should be clearly understood that no question of the trailer being affixed to real estate or used for dwelling purposes is involved. It is just this: Can Ford have this thing in his yard, or must he either garage it or park it in another township?

The hornbook law on this matter is relatively clear-cut. "The [police] power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare. . . ." A court is "bound to accept the judgment of the legislative body

concerning the necessity for zoning classifications", but may determine "whether or not a particular zoning classification bears a substantial relationship to the public health, safety, morals or general welfare": Anstine v. Zoning Board of Adjustment, 411 Pa. 33 (1963).

The black-letter text of 26 P. L. Encyc. Municipal Corporations §446, says "The restrictions or limitations of a zoning ordinance must be reasonable. . ."

In Lord Appeal, 368 Pa. 121 (1951), the Supreme Court reviewed the history of zoning and concluded that "A person has a right to use his own home in any way he desires, provided he does not (1) violate any provision of the Federal or State Constitutions; or (2) create a nuisance; or (3) violate any covenant, restriction or easement; or (4) violate any laws or zoning or police regulations which are constitutional. . .

"A home owner cannot be deprived by zoning of a right to use his own property as he wishes merely because a zoning board believes that what he intends to erect is not artistic or aesthetic: Liggett's Petition, 291 Pa. 109. . . .

" ' "We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change": Pennsylvania Coal Co. v. Mahon, 260 U. S. 393. . .' "; and, " 'Where a statute or ordinance interferes with the use and control of property without rational relation to public safety, health, morals, or general welfare, *or is a palpable invasion of rights secured by the fundamental law, the enactment cannot be sustained* as a legitimate exercise of police power' ".

A case almost exactly like this came before the County Court of Allegheny County, Pa. In an unreported decision, Kling v. Township of Shaler, No. A-1615 of 1962, Lencher, P. J., decided in favor of the

property owner. The Kling case is on exact all fours with this. The vehicle concerned was a travel trailer. Judge Lencher drew a table to show the distinction in use, class of use and design between the mere parking of a travel trailer on a lot and the domestic occupation of a mobile home. A travel trailer is transportation equipment; it is an accessory use, not a primary use, and it is designed primarily for compactness and movement. Nothing in a travel trailer hooks up. In the light of the theoretical background set forth by our highest courts and the specific application of these principles in an identical case by our neighboring county, it seems that we would fly in the face of precedent to uphold the South Strabane ordinance. The Ford appeal is accordingly sustained, with costs on the township.