County of Fayette, Appellant, *v.* John Holman, Appellee.

Argued November 9, 1973, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*Robert E. Eberly, Jr.,* with him *J. E. Ferens,* for appellant.

*Fred C. Adams,* with him *Ralph K. Barclay, Jr.,* and *Coldren & Adams,* for appellee.

OPINION BY JUDGE ROGERS, December 31, 1973:

The County of Fayette has appealed from an order of the Common Pleas Court of that County directing the issuance of a zoning certificate authorizing the location of a mobile home and the use thereof as a dwelling in a zoning district in which, under the county's zoning ordinance, such location and use are prohibited.

Fayette County contains 802 square miles or 513,280 acres. The county's zoning ordinance permits the location and use of mobile homes in eighty percent of the land area of the county. The ordinance, as do most such zoning enactments, requires persons intending to locate any structure on or to make a new use of land to apply for and obtain a zoning certificate. The appellee, John Holman, the owner with his wife of a 40 by 125 foot lot located in an R-1 zoning district where mobile homes are not permitted to be used as dwellings, although warned by a neighbor that what he was about to do violated the county zoning ordinance, moved a 12 by 55 foot trailer to his lot, removed its wheels, supported its corners on masonry blocks, and connected it to water, sewer and electrical services. The lot is in a residential area known as Homewood Terrace, near

Uniontown. The Holmans did not live in Homewood Terrace. Mr. Holman intended that his son and daughter-in-law would live in his mobile home, but at the time of the hearing in the court below it was vacant.

Mr. Holman applied for a zoning certificate only after neighbors complained to county officials of the presence of a mobile home in their community. The county zoning inspector refused the certificate, as by the ordinance he was required to do, and the Zoning Hearing Board affirmed his decision. No verbatim record was made of the hearing before the Zoning Hearing Board and the Court of Common Pleas made the evidentiary record.

In the lower court and here, Holman contended that after the wheels were removed from his mobile home, and it was supported instead on blocks and connected to utilities, it was no longer a mobile home and that therefore there was no impermissible use of the lot. The county zoning ordinance defines a mobile home as follows: "A detached dwelling unit which (1) is designed for long term occupancy and contains sleeping accommodations, a flush toilet, a tub or shower bath and kitchen facilities with plumbing and electrical connections provided for attachment to outside systems; (2) is designed to be transported after fabrication on its own wheels, on a flat bed or on detachable wheels; and (3) arrives at the site where it is to be occupied as a dwelling, complete, including major appliances, furniture, and ready for occupancy except for minor incidental unpacking and assembly operations, location on foundations, supports, connections to utilities and the like." By this definition, the appellee's mobile home clearly remained a mobile home after it reached the lot in Homewood Terrace and was subjected to Mr. Holman's improvements and was as clearly prohibited. *Town of Brewster v. Sherman,* 343 Mass. 598, 180 N.E.

2d 338 (1962), and *Wright v. Michaud,* 160 Me. 164, 200 A. 2d 543 (1964).

The lower court did not base its decision upon this argument, but upon its conclusion that, although the ordinance's goals of preserving aesthetic and property values in those portions of the county within the R-1 district were laudable, they were "unattainable in the face of clear cut adverse rulings of the courts of Pennsylvania, prohibiting discriminatory zoning classifications of mobile structures." The court cited in support of its conclusion *Anstine v. Zoning Board of Adjustment,* 411 Pa. 33, 190 A. 2d 712 (1963), and *Shomo v. Derry Borough,* 5 Pa. Commonwealth Ct. 216, 289 A. 2d 513 (1972).[1]

In *Anstine* a provision of a township zoning ordinance prohibiting the location of mobile homes in a residential district was held to be unreasonable and discriminatory in the circumstances there present. That case did not hold that mobile homes may not be excluded from a residential district under any circumstances. Indeed Chief Justice BENJAMIN R. JONES' opinion clearly allows for such a regulation where the facts show that it is reasonably related to the general welfare of the community:

"Assuming that this zoning classification is unrelated to standards generally considered, such as the public health, morals or safety, we must consider its relation to the 'general welfare' of York Township. The only basis upon which the Township could justify the exclusion of mobile homes from this area on the

---

[1] *Shomo v. Derry Borough* is clearly not on point. The ordinance struck down by us in that case was a building regulation tailored to prevent the location of mobile homes anywhere in the municipality in question. Our holding strongly relied on Supreme Court cases holding that zoning provisions totally excluding otherwise lawful activities must have a more substantial relationship to the police powers than regulations assigning uses by district.

ground of 'general welfare' would be that the presence of this mobile home would aesthetically injure the neighborhood or would lower the values of adjoining properties. However, on the posture of this record, neither element need receive our consideration. There is not a scintilla of evidence of an unfavorable aesthetic impact of a mobile home on this area while there is evidence that the location of this mobile home will enhance the value of the surrounding property.

"The township argues that there is a presumption that the ordinance in question was enacted to preserve the beauty and property values of York Township. Thus, the Township would have us presume that the style or design of a mobile home per se detracts from the aesthetic characteristics of the community and, accordingly reduces neighboring property values and that a conventional dwelling house, no matter its unattractiveness, will not have the same effect. This is clear error. We are bound to look no further than the record before us. This record does not reveal whether appellants' requested improvement will or will not enhance the aesthetic characteristics of the neighborhood and the only evidence relating to the concept of aesthetics is the testimony of a realtor to the effect that the improvement of appellants' dwelling would hide an existing concrete block structure used as a hobby shop and to that extent aesthetically enhance the area. An expert testifying for appellants stated that the improved structure would increase the value of appellants' property and that it 'will tend to make it [the immediate area] more of a residential area.' In effect, this testimony amounted to an expert's opinion of the favorable impact of this property use on this immediate neighborhood. A party protesting the permit testified that he had heard that the value of adjoining properties had depreciated $2,000 since the placing of the mobile home

on appellants' property. This is not competent evidence that the improvement of such mobile home will adversely affect the property values of the entire community or the adjoining properties. See: Best v. Zoning Board of Adjustment, supra, 393 Pa. at 117, 141 A. 2d at 612. The absence of any evidence on this record relating to the preservation of aesthetic characteristics removed this element from our consideration as a proper exercise of the Township power to promote the general welfare." 411 Pa. 33, 41-43, 190 A. 2d 712, 717.

In clear distinction to *Anstine,* there is in this record evidence that the Holman trailer has an unfavorable aesthetic impact on the area in which it has been located and that it will adversely affect property values. The well qualified executive director of the County Planning Commission testified as to the former and a real estate broker, builder and appraiser of forty-five years experience testified that *this* trailer in *this* area of Homewood Terrace adversely affected property values.[2]

It can no longer be argued that Pennsylvania, unlike its sister states, does not accord to the concept of the general welfare a life of its own. The general welfare includes considerations of aesthetic and property values. Not only does *Anstine* so hold but so also do other appellate authorities. Hence, " 'If the appellant's first contention [that general welfare has no independent significance] is the law, then the whole plan and scheme of zoning must be cast aside because business and industry could invade any zone just so long as it could be shown that the proposed use would not ad-

---

[2] The instant case makes good the prophecy of Justice COHEN who in *Anstine* believed the record should be remanded for additional evidence and who wrote: "I am fearful that this holding may be misconstrued to mean that under no circumstances can a community regulate the placement and existence of trailer homes." 411 Pa. at 44, 190 A. 2d at 718.

versely affect to any reasonable extent the public health, safety, or morals. The statutory law of zoning would be replaced by the law of nuisance.' " *Swade v. Springfield Township Z.B.A.*, 392 Pa. 269, 271, 140 A. 2d 597, 598 (1958). "Although some of our recent cases appear to have ignored 'general welfare' as a consideration in adjudging whether the police power has been constitutionally exercised in a given instance, it is not open to serious question that it is one of the important elements to be reckoned with in any such inquiry. Its importance lies partly in the fact that it admits of aesthetic considerations when passing upon the validity of a zoning ordinance." *Bilbar Construction Co. v. Easttown Township Board of Adjustment*, 393 Pa. 62, 72, 141 A. 2d 851, 856-857 (1958). "Not only is the preservation of the attractive characteristics of a community a proper element of the general welfare, but also the preservation of property values is a legitimate consideration . . ."; *Best v. Zoning Board of Adjustment*, 393 Pa. 106, 117, 141 A. 2d 606, 612-613 (1958) ; "Health, and safety, and morals, and general welfare are the indispensable sine qua non for a zoning ordinance. Moreover, in connection with the general welfare, the nature, the size, and the particular and general character of the property in question and of the neighborhood, are important factors which, among others, must be considered by the zoning authorities." *Cleaver v. Board of Adjustment*, 414 Pa. 367, 374, 200 A. 2d 408, 413 (1964).

Order reversed.

---

CONCURRING OPINION BY JUDGE MENCER:

I concur in the result reached by the majority. However, I cannot agree that the appellee's mobile home remained a mobile home because of the definition in the county zoning ordinance. I believe it remained a mo-

bile home because its corners *only* were supported on masonry blocks and that it would remain a mobile home until it was placed on a concrete block foundation, which was the factual situation considered in *Anstine v. Zoning Board of Adjustment*, 411 Pa. 33, 190 A. 2d 712 (1963). Once it would be placed on a concrete block foundation, in the words of *Anstine,* "the structural construction of this home differs from that of a conventional home only to the extent that it is of a smaller scale. The degree of difficulty in physically moving the structure is the same. Setting aside for the moment all niceties of definition, . . . [placing the structure on a concrete block foundation] envisons the maintenance of a permanent and immobile house within this residential area." *Id.* at 40, 190 A. 2d at 716.

My review of the facts of this case convinces me that here the appellee's mobile home remained a mobile home and did not become an immobile house or residence, as occurred under the factual situation in *Anstine*. Therefore, I concur in the result reached by the majority. However, once a mobile home becomes converted to an immobile house then it must be thereafter treated as a dwelling or residence and is an allowable use in a district zoned residential.

The language in *Anstine* indicating that the presence of a mobile home "would aesthetically injure the neighborhood or would lower the values of adjoining properties" was obiter dictum. Once the *Anstine* Court concluded that factually they were dealing with an immobile house and not a mobile home, then their lengthy discussion of a mobile home's aesthetic injury to the neighborhood or its adverse import on adjacent property values was surely dictum. The majority's reliance on such language to decide this case fails to answer initially the crucial question as to whether there is a mobile home or an immobile house on appellee's property.

365

Under the *Anstine* language, followed by the majority here, it is only when a mobile home is involved that we may consider its aesthetic consequences and adverse import on property values. However, the majority in the present case either assumes that appellee has a mobile home or concludes so by the definition used in the ordinance, whereas I would decide by the "foundation" and "mobility" test of *Anstine*, rather than by the "definition" test utilized in this case.