## Trumbaur v. Zoning Hearing Board

*William G. Malkames*, for appellants.
*Edward H. McGee*, contra.

BACKENSTOE, *J.*, January 21, 1975—The sole issue raised in this rather interesting zoning appeal is the interpretation of certain provisions of the Lower Milford Township Zoning Ordinance. The essential facts leading to this litigation are not in dispute.

On August 18, 1973, appellants applied for and were granted a building permit to construct a single-family dwelling upon property located in an agricultural zone of the township. In September of 1973, appellants installed on their lot a prefabricated dwelling commonly known as a mobile home. The home was placed on a permanent foundation and was then connected to on-site water and sanitary sewer facilities.

Subsequently, appellants were notified that a mobile home is not a permitted structure in an ag-

ricultural zone and, consequently, their building permit was revoked and criminal charges would be filed against them. In November, appellants filed an application to the zoning hearing board seeking a ruling by that board that the structure located upon the property was, in fact, a single-family dwelling within the meaning of the ordinance. In the alternative, appellants asked for a variance permitting them to use the mobile home as a single-family dwelling.

After hearing and a decision by the board adverse to appellants' position, this appeal was taken and the matter is now before this court for disposition.

Since no additional testimony was presented to this court, our review is limited to a determination of whether the zoning board clearly abused its discretion or committed an error of law: Mulac Appeal, 418 Pa. 207, 210 A. 2d 275 (1965). Further, since this case involves the construction of a zoning ordinance, various other legal principles govern our deliberations. Thus, since restrictions imposed by zoning ordinances are in derogation of the common law, they must be strictly construed. In the absence of any definition to the contrary in the zoning ordinance, a term must be presumed to be employed in its broadest sense: Burgoon v. Zoning Hearing Board of Charlestown Township, Chester County, 2 Pa. Commonwealth Ct. 238, 277 A. 2d 837 (1971). The widest permissive use of the land is the rule not the exception unless specifically restrained in a valid and reasonable exercise of the police power: Fidler v. Zoning Board of Adjustment, 408 Pa. 260, 182 A. 2d 692 (1962). Any doubt concerning the scope of a permitted use or an ambiguity respecting its definition must be resolved in favor of the applicant: Abington Township v. Dunkin' Donuts

Franchising Corp., 5 Pa. Commonwealth Ct. 399, 291 A. 2d 322 (1972).

Finally, where the validity of a statute is assailed and the statute is reasonably susceptible of two constructions, by one of which the statute would be unconstitutional and by the other it would be valid, the court should adopt the interpretation which will uphold it: United States v. Harriss, 347 U.S. 612, 74 S. Ct. 808, 98 L. Ed. 989 (1954); Commonwealth v. Great American Indemnity Co., 312 Pa. 183, 167 Atl. 793 (1933).

Bearing these principles in mind, we are convinced that the board has erred in the interpretation of the ordinance and, therefore, appellants are entitled to the relief which they seek. Appellants reside in an agricultural district which allows as a permitted use single-family detached dwellings, two-family dwellings, and sectional ranch houses. A single-family detached dwelling is defined in the ordinance as "a building on a lot, designed and occupied exclusively as a residence for one family, and which has no party wall in common with an adjacent building." A sectional ranch house is defined in the ordinance as "a dwelling unit manufactured in two or more sections designed for permanent occupancy, and transported to a building site in sections which are fastened together and mounted on a permanent foundation ready for occupancy except for minor and incidental unpacking and assembly operations." A mobile home is defined as "a dwelling unit manufactured in one complete section; designed for long-term occupancy: containing sleeping accommodations, a flush toilet, a tub or shower bath, and kitchen facilities with plumbing and electrical connections provided for attachment to outside systems; and

designed to be transported after fabrication on its own wheels, or on flatbed or other trailers; arriving at the site where it is to be occupied as a dwelling complete, including major appliances and furniture, and ready for occupancy except for minor and incidental unpacking and assembly operations."

Thus, a sectional ranch house is two or more sections transported to a building site to be fastened together there and used as a dwelling designed for permanent occupancy, while a mobile home is a unit manufactured in one complete section and taken and delivered to the site where it is designed for long-term occupancy.

We believe in construing these definitions in the manner required, the home which appellants placed upon the property fits only the definition of single-family detached dwelling. It is not a sectional ranch house, because, although it is placed on a permanent foundation, it is not in two or more sections. It is not a mobile home within the meaning of the ordinance, because it is not a dwelling unit manufactured in one complete section which is brought to a site to be occupied as a dwelling complete except for minor and incidental unpacking and assembly operations. The home, which was transported to the site, was not complete for appellants' purposes until it was affixed to a permanent foundation. Consequently, the unit, which was placed on the property, does not qualify as either a sectional ranch house (a permitted use) or a mobile home (a non-permitted use). Therefore, since it is a residence, it must be a single-family detached dwelling.

In coming to this conclusion, we would note that to rule otherwise would raise very serious constitutional questions. A statute which permits a prefab-

ricated dwelling which is constructed in two sections and prohibits a prefabricated dwelling which is constructed in one section runs the grave risk of being ruled unconstitutional as arbitrary and discriminatory. In our opinion, there is no meaningful difference. Further, under the terms of the ordinance, if one had constructed appellants' home on the property in precisely the same manner it was constructed off the property, there would be no doubt that it would qualify as a single-family detached dwelling. The fact that it was built off the premises and brought on the property is again, in our opinion, a distinction without a difference. As noted by Ryan in his treatise on zoning, this type of regulation comes perilously close to regulating building design: Ryan's Pa. Zoning Law and Practice §3.4.5.

The Chief Justice, then Justice Jones, in Anstine v. Zoning Board of Adjustment, 411 Pa. 33, 37, 190 A. 2d 712, 714 (1963), quoting various authorities, stated: "all property is held in subordination to the right of its reasonable regulation by the government *clearly necessary* to preserve the health, safety or morals (or general welfare) of the people. . . . There is one matter that is quite certain, *the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety, and general welfare*" (Emphasis in original).

In Schmalz v. Buckingham Township Zoning Board of Adjustment, 389 Pa. 295, 132 A. 2d 233 (1957), the court held that it was the duty of a court, before which the reasonableness of a zoning ordinance has been questioned, to determine whether

that ordinance constituted a valid exercise of the police power. While the courts are bound to accept the judgment of the legislative body concerning the necessity for zoning classifications, they may, nevertheless, inquire as to whether or not a particular zoning classification bears a substantial relationship to the public health, safety, morals or general welfare: Bilbar Construction Co. v. Easttown Township Board of Adjustment, 393 Pa. 62, 141 A. 2d 851 (1958); Best v. Zoning Board of Adjustment, 393 Pa. 106, 141 A. 2d 606 (1958).

On the basis of these principles, various courts have held ordinances similar to the instant one unconstitutional. See for example: Anstine v. Zoning Board of Adjustment of York Township, supra; Pymatuning Township Zoning Ordinance Appeal of Hamm, 52 D. & C. 2d 187 (1971); Hart v. Wolf Township Board of Adjustment, 56 D. & C. 2d 531 (1972).

We do not believe County of Fayette v. Holman, 11 Pa. Commonwealth Ct. 357, 315 A. 2d 335 (1973), cited by the township, is in any sense controlling. The court in that case did not have to consider an ordinance permitting one type of prefabricated housing and excluding another. Further, in this case, unlike Fayette, we have the home affixed to a permanent foundation, a factor which Judge Mencer, in his concurring opinion, notes is decisive.

In conclusion, we would be remiss if we did not point out that we are not unsympathetic to the attempts by the township authorities to control and regulate the type of building and development in their municipality. We understand and fully appreciate the ends which the drafters of the ordinance are attempting to reach. The problem, of

course, lies in the fact that these goals frequently clash with the inherent right of a landowner to reasonably use his property. If an owner can erect an unsightly structure upon his land and not be subjected to a zoning attack, that such a structure will lower property values and have an adverse aesthetic impact on the community, we fail to see how another landowner may be so subjected merely because he used a different construction technique.

For the foregoing reasons, we enter the following

## ORDER

And now, January 21, 1975, the order of the Zoning Hearing Board of Lower Milford Township rescinding the building permit issued to appellants in the within matter is revoked.