James Gravatt, III, Appellant v. Borough of Latrobe and Latrobe Board of Adjustment, Appellees.

Argued November 2, 1978, before Judges WILKINSON, JR., BLATT and MACPHAIL, sitting as a panel of three. Reargued June 5, 1979, before President Judge

BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, CRAIG and MACPHAIL. Judges BLATT and DISALLE did not participate.

*William C. Stillwagon,* for appellant.

*Robert P. Lightcap,* with him *Charles C. Mason, Jr.,* and *Lightcap, McDonald & Moore,* for appellee.

OPINION BY JUDGE WILKINSON, JR., July 26, 1979:

With commendable candor Counsel for both sides have presented for the decision of this Court the raw question: Can a zoning ordinance be constitutional when it excludes mobile homes from certain districts, permitting them in other districts, on the sole ground the mobile home "travels" to its permanent site on its own running gear? In all other respects the mobile home conforms to the requirements of a single family dwelling. If it had been constructed on the site, from the same materials and with the same plans, and had been built on the same foundation, it would have complied with all zoning requirements. At the time the cost of the mobile home would have been $6,800.00, fully furnished. A conventional house using the same

floor plan would have cost in excess of $25,000.00, unfurnished. Our answer to this question is yes.

Section I of Ordinance No. 74-5 of the Borough of Latrobe defines mobile home:

Mobile Home: A transportable, single-family dwelling, which may be towed on its own running gear, and which may be temporarily or permanently affixed to real estate, by placement on blocks, foundation or similar construction, and used for non-transient residential purposes, and constructed with the same, or similar, electrical, plumbing, and sanitary facilities as immobile housing.

The trial court affirmed action refusing the appellant's request for a permit to place a mobile home in this residential area. This was done after the trial court took additional testimony and considered the matter de novo. The trial court expressly felt bound by our decision in *County of Fayette v. Holman*, 11 Pa. Commonwealth Ct. 357, 362, 315 A.2d 335, 338 (1973). This is certainly understandable since we said in *Holman*: "It can no longer be argued that Pennsylvania, unlike its sister states, does not accord to the concept of the general welfare a life of its own. The general welfare includes consideration of aesthetic and property values." The rationale and history of the law supporting our decision in this case that aesthetic and property values are a proper consideration under general welfare were ably presented and discussed by Judge ROGERS in *Holman* and will not be repeated here.[1]

It will bear repeating, however, that our Supreme Court struck down the denial of a variance for a place-

---

[1] *Holman* was discussed as a Recent Case Note in 78 Dick. L. Rev. 605 (1975) under the title, "Zoning—General Welfare Includes Consideration of Aesthetic and Property Value."

ment of a mobile home in *Anstine v. Zoning Board of Adjustment,* 411 Pa. 33, 190 A.2d 712 (1963) only because there was no evidence presented in that case that would support a finding that the placement of the mobile home would adversely affect aesthetic or property values. Appellant does not contest that, if such considerations are proper, there is more than ample testimony[2] in this case to support the trial court's finding:

> The real estate experts for both Plaintiffs and Defendant dealt extensively with the aesthetic and property value considerations of the effect of mobile homes in a residential area having such moderately priced homes. It was established that mobile homes in the area of Defendant's lot would have an overall impact which would hold down real estate value in the neighborhood, be non-conforming as to syle and objectionable in this location.

Accordingly, we will enter the following

ORDER

AND Now, July 26, 1979, the order of the Court of Common Pleas of Westmoreland County, Civil Action —Law, No. 873 of 1975, dated September 27, 1977 is affirmed.

---

[2] Thus, this case is factually distinguishable from *Anstine, supra,* where the court rejected the argument that the style or design of a mobile home per se detracts from the aesthetic characteristics of the community and reduces neighboring property values.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. The majority, citing our decision in *County of Fayette v. Holman,* 11 Pa. Commonwealth Ct. 357, 315 A.2d 335 (1973), holds that the general welfare includes considerations of aesthetic

and property values. In *Holman*, Judge ROGERS wrote, in this regard, the following: "Not only does [Anstine v. Zoning Board of Adjustment, 411 Pa. 33, 190 A.2d 712 (1963)] so hold but so also do other appellate authorities." 11 Pa. Commonwealth Ct. at 362, 315 A.2d at 338. However, in *Anstine,* our Supreme Court specifically stated that its "instant ruling in no wise determines that aesthetics is or is not a factor in zoning." 411 Pa. at 43 n. 2, 190 A.2d at 717 n. 2.

Use of aesthetic criteria in zoning cases raises for me serious constitutional question. *See Rogalski v. Upper Chichester Township,* 406 Pa. 550, 178 A.2d 712 (1962) (aesthetic reasons not sufficient in themselves to support a conclusion that the operation of a "junk yard" will be contrary to the best interest of the community).

However, more significant here is how the ordinance in question defines "mobile home." Section I of Ordinance No. 74-5 of the Borough of Latrobe reads:

Mobile Home: A transportable, single-family dwelling, which may be towed on its own running gear, and which may be temporarily or permanently affixed to real estate, by placement on blocks, foundation or similar construction, and used for non-transient residential purposes, and constructed with the same, or similar, electrical, plumbing, and sanitary facilities as immobile housing.

Once the single-family dwelling is "permanently affixed to real estate, by placement on blocks, foundation or similar construction . . . and constructed with the same, or similar, electrical, plumbing, and sanitary facilities as immobile housing," in the words of *Anstine,*

the structural construction of this home differs from that of a conventional home only to the extent that it is of a smaller scale. The degree of

difficulty in physically moving the structure is the same. Setting aside for the moment all niceties of definition, . . . [placing the structure on a concrete block foundation] envisions the maintenance of a permanent and immobile house within this residential area.

411 Pa. at 40, 190 A.2d at 716.

I repeat what I wrote in my concurring opinion in *Holman* and what is equally applicable to the instant case:

The language in Anstine indicating that the presence of a mobile home 'would aesthetically injure the neighborhood or would lower the values of adjoining properties' was obiter dictum. Once the Anstine Court concluded that factually they were dealing with an immobile house and not a mobile home, then their lengthy discussion of a mobile home's aesthetic injury to the neighborhood or its adverse import on adjacent property values was surely dictum. The majority's reliance on such language to decide this case fails to answer initially the crucial question as to whether there is a mobile home or an immobile house on [appellant's] property.

Under the Anstine language, followed by the majority here, it is only when a mobile home is involved that we may consider its aesthetic consequences and adverse import on property values. However, the majority in the present case either assumes that [appellant] has a mobile home or concludes so by the definition used in the ordinance, whereas I would decide by the 'foundation' and 'mobility' test of Anstine, rather than by the 'definition' test utilized in this case.

11 Pa. Commonwealth Ct. at 364, 315 A.2d at 339.