White Advertising Metro, Inc. and Robert and Mary Louise Klinger, Appellants *v.* The Zoning Hearing Board of Susquehanna Township, Appellee.

Argued June 7, 1982, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and DOYLE, sitting as a panel of three.

*Edward C. First, Jr.*, with him *Mary Jane Forbes, McNees, Wallace and Nurick*, for appellants.

*Robert L. Knupp, Graf, Knupp and Andrews, P.C.*, for appellee.

OPINION BY JUDGE DOYLE, December 8, 1982:

This is an appeal from an order of the Court of Common Pleas of Dauphin County denying the appeal of White Advertising Metro, Inc. (White) from a decision of the Susquehanna Township Board of Commissioners (Board) which denied White's application for conditional use permits to construct three outdoor advertising signs in the Township. We reverse.

On or about August 22, 1978, White filed an application with the Zoning Officer of Susquehanna Township for a conditional use permit to erect outdoor advertising signs on land leased from Conrail Corporation and located along U.S. Route 22/322, a four lane divided highway also known as the River Relief Route. The land in question is within an area zoned as a General Industrial District. In accordance with the provisions of the Susquehanna Township Zoning Ordinance (Zoning Ordinance), the application was forwarded to the Planning Commission for review. The Planning Commission approved the application and forwarded it with their recommendation to the Board of Commissioners. The Board denied the application but did not issue written findings of fact or reasons for the determination. White appealed to the Susquehanna Township Zoning Hearing Board (Zoning Hearing Board) challenging the constitutionality of the Zoning Ordinance provisions requiring conditional use permits for outdoor advertising signs. The Zoning Hearing Board rejected the challenge and White appealed to the Court of Common Pleas, reiterating the constitutional challenge and alleging also

that the Board violated the Local Agency Law[1] in failing to issue its determination in written form.[2] On July 2, 1979, the Court of Common Pleas upheld the constitutionality of the Zoning Ordinance but remanded the case to the Board for issuance of a written opinion and accompanying explanation for the denial of the application. The Board held another public hearing and permitted White to submit additional information and evidence in support of his application. The Board again denied White's application and issued a written adjudication. White appealed again to the Court of Common Pleas alleging that the findings of the Board were not supported by substantial evidence and were clearly erroneous as a matter of law. The Court, *per curiam,* denied White's appeal.

The scope of our review in zoning cases where the Court of Common Pleas does not take additional evidence on appeal is well settled. We must determine whether the Board abused its discretion or committed error of law and whether the Board's findings of fact are supported by substantial competent evidence. *Lake Adventure, Inc. v. Zoning Hearing Board of Dingman Township,* 64 Pa. Commonwealth Ct. 551, 440 A.2d 1284 (1983) ;[3] *Susquehanna Township Board*

---

[1] Act of December 2, 1968, P.L. 1133, formerly 53 P.S. §11301, repealed by Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, 42 P.S. §20002(a) [1429]. A similar act is now found in 2 Pa. C. S. §§551-553, 751-754.

[2] 2 Pa. C. S. §555 provides that "[a]ll adjudications of a local agency shall be in writing, [and] shall contain findings and the reasons for the adjudication. . . ."

[3] We note that our case law only sporadically includes a substantial competent evidence test in our articulation of the scope of review in these cases. In *Lake Adventure,* we noted, however, that "[i]f the Board's fact findings are unsupported by substantial competent evidence of record, it has committed an abuse of discretion." *Lake Adventure,* 64 Pa. Commonwealth Ct. at 555, 440 A.2d at 1287. A substantial competent evidence test is, consequently, implicitly included in our review.

*of Commissioners v. Hardee's Foods Systems, Inc.,* 59
Pa. Commonwealth Ct. 479, 430 A.2d 367 (1981);
*Bruni v. Zoning Hearing Board of Plymouth Town-
ship,* 52 Pa. Commonwealth Ct. 526, 416 A.2d 111
(1980); *Chester County Mall v. Board of Supervisors
of West Goshen Township,* 44 Pa. Commonwealth Ct.
119, 402 A.2d 1160 (1979); *Heck v. Zoning Hearing
Board for Harvey's Lake Borough,* 39 Pa. Common-
wealth Ct. 570, 397 A.2d 15 (1979); *Soble Construction
Co. v. Zoning Board,* 16 Pa. Commonwealth Ct. 599,
329 A.2d 912 (1974). White urges that the Board's
denial of its conditional use permits was an abuse of
discretion and was not supported by the evidence ad-
duced at the public hearing. We agree.

Commercial signs are authorized by Section 202 of
the Zoning Ordinance as a conditional use in a General
Industrial District.[4] In addition, we note that Section
229 of the Zoning Ordinance, which contains the gen-
eral provisions applicable to signs and commercial
signs, provide, *inter alia,* that signs be properly main-
tained,[5] pose no safety hazard or nuisance to neigh-
bors through illumination,[6] and be limited in size and

---

[4] Section 202 Q of the Zoning Ordinance provides as a per-
mitted use in General Industrial Districts: "Commercial signs, when
authorized as a conditional use as provided for in Section 19.02 of
this ordinance."

[5] Section 229 A 3 of the Zoning Ordinance provides:

*Maintenance*—Every sign shall be kept in a state of
good repair from the standpoint of safety, fire protection
and appearance. The Zoning Officer shall require such
maintenance and, in the event of failure of a sign owner to
correct unsafe conditions or dilapidated appearance within
fifteen (15) days, the Zoning Officer shall order the re-
moval of the sign by the Township at the owner's expense.
All signs not owned by the person, firm or organization ad-
vertising thereon shall carry a clearly legible imprint show-
ing the owner's name.

[6] Section 229 A 5 of the Zoning Ordinance provides in pertinent
part: "No sign shall be so illuminated as to permit spot or flood

location along the roadway.[7] The evidence is uncontroverted that White's proposed signs meet the specifications in Section 229.[8] The dispute of the parties focuses on whether White has satisfied the standards and criteria necessary to qualify as a conditional use.

Section 603 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10603 provides that zoning ordinances enacted by local governing bodies may contain "[p]rovisions for conditional uses to be allowed or denied by the governing body after recommendations by the planning agency, pursuant to express standards and criteria set forth in the ordinance." In Section 262 C of the Zoning Ordinance we find the standards and criteria applicable in this case:

> C. *Conditional Uses.* Applications for any conditional uses permitted by this ordinance will be made to the Zoning Officer who shall refer such applications to the Township Planning Commission chairman seven (7) days prior to the Planning Commission's next regularly scheduled meeting. The Planning Commission

lights to shine into or have a blinding effect upon vehicular traffic. No sign shall be so illuminated as to constitute a nuisance by spilling light into any adjacent residential property."

[7] Section 229 D of the Zoning Ordinance provides:

Commercial sign structures (billboards, sign boards, outdoor advertising signs) may be erected where permitted as a conditional or special exception use, providing that such commercial sign structures do not exceed three hundred (300) square feet in surface area and are spaced at intervals of not less than one thousand (1,000) feet along the same side of any street or highway. No commercial sign structure shall be located within one hundred (100) feet of any street intersection.

[8] White's application included drawings to scale showing construction detail and size of the signs, and indicated that the metal signs would be visited monthly for repairs, and would not be illuminated at all.

will review the application pursuant to its standards and criteria and submit its recommendations to the Township Board of Commissioners for approval or denial. Recommendations made will be based on, but not limited to, the following standards and criteria:

1. *Compatibility*—The proposed use will be reviewed as to its relationship to and effect upon surrounding land uses and existing environmental conditions regarding the pollution of air, land and water; noise; potential of hazards and congestion; illumination and glare; restrictions to natural light and circulation of air.

2. *Purpose*—Review the intended purpose of the proposed use as it relates to the Township's development objectives established in the Susquehanna Township Comprehensive Plan.

3. *Suitability*—The nature of activity and population served, numbers of participating population, frequency of use, adequacy of space and spatial requirements, potential generation and impact of congestion will be reviewed as suitably related to the proposed location of potential use.

4. *Accessibility*—Ingress and egress to the site of the proposed use, circulation and movement of pedestrian and vehicular traffic, parking requirements and accessibility to the existing and proposed Township highway system will be reviewed.

5. *Serviceability*—Reviews will be made as to the adequacy and availability of utility services and facilities such as sanitary and storm sewers, water, trash and garbage collection and disposal and the ability of the Township to supply such services.

6. *Applicability*—The proposed use will be reviewed as to its application to and coordination with the planning policies of the Township and its Comprehensive Plan and plans for land use, highways, schools, parks, sewers, water distribution and population growth.

White asserts that he presented ample favorable evidence in the six areas of consideration listed in Section 262 C. He argues that the Board is limited to these six areas of consideration and may not deny his application for the conditional use permit based on "aesthetic" and "economic" considerations not delineated in the Zoning Ordinance. The Board, on the other hand, urges that the "aesthetic" and "economic" considerations supporting the denial are contemplated in the Board's power to interpret and apply the ordinance for the general safety and welfare of the public. The Board argues that even if White has met the specific requirements of the Zoning Ordinance, the general detrimental effect of the proposal was not overcome.

At the heart of this dispute is the question of what burden is borne by each party in the proof of compliance with the conditions of the ordinance and the general considerations of the welfare of the public. We reviewed the line of decisions on this issue in *Bray v. Zoning Board of Adjustment*, 48 Pa. Commonwealth Ct. 523, 410 A.2d 909 (1980). In that case, we delineated the burdens of persuasion and duties to present evidence in an application for a special exception as follows:

> *Specific requirements*, e.g., categorical definition of the special exception as a use type or other matter, and objective standards governing such matter as a special exception and generally:

The applicant has both the duty and the burden.

*General detrimental effect,* e.g., to the health, safety and welfare of the neighborhood:

Objectors have both the duty and the burden, the ordinance terms can place the burden on the applicant but cannot shift the duty. . . .

*General policy concern,* e.g., as to harmony with the spirit, intent or purpose of the ordinance:

Objectors have both the duty and the burden; the ordinance terms cannot place the burden on the applicant or shift the duty to the applicant. . . .

*Id.* at 530-31, 410 A.2d at 913 (citations omitted). While *Bray* admittedly involved an application for a special exception, not a conditional use, we believe that our decisional law dictates that the same burdens apply. This Court has noted that "[t]here is little difference in this regard between applications for a conditional use and a special exception." *Greensburg City Planning Commission v. Threshold, Inc.,* 12 Pa. Commonwealth Ct. 104, 107-08, 315 A.2d 311, 313 (1974). We note additionally that the burdens applied to a conditional use in *Greensburg* are consistent with those articulated in *Bray.*

So then, in the case before us, we must determine first whether White met his burden to show compliance with the specific requirements and objective standards in the Zoning Ordinance applicable to the proposed commercial signs. As noted earlier, there is no dispute that the proposal met the size, location, maintenance, and illumination specifications in the ordinance; the question here is whether White showed compliance with the objective standards governing conditional uses.

The record shows that in its supplemental application, and during the second hearing, White addressed each of the standards delineated in Section 262 C of the Zoning Ordinance.[9] With regard to the first standard, *compatibility,* White showed that the signs posed no threat of pollution to air, land or water, no threat of noise, illumination or glare, no potential hazard or congestion on the road and no restrictions to natural light or circulation of air. With regard to *purpose,* White showed that the signs were consistent with the uses permitted in the General Industrial District in which they were located and were consistent with the intent of the Susquehanna Township Comprehensive Plan to encourage orderly and directed development of commerce and industry in the Township. White's signs constituted an essentially passive use of the land generating no congestion under the *suitability* standard. In addition, White pointed out that signs serve everyone who is informed by them and could easily be used to advertise local business establishments. With regard to *accessibility,* White showed that no additional burden on the township road system is created by the signs since ingress and egress would be via an existing service road along a railroad right of way, and visitation to the site would be only monthly. Additionally, White showed that the signs created no additional burden on township services, requiring no trash or garbage collection, no sanitary or storm sewers or water service to be considered under the *serviceability* standard. With regard to the last standard for consideration, *applicability,* it is difficult to know what is intended by the ordinance. We believe it to

---

[9] We note that the language in these standards is directed toward review of conditional uses which incur greater physical development of the land and active use of the property than White's proposal. They are consequently, as articulated, difficult to apply in the present context.

indicate that the application will be reviewed for general consistency with the planning policies and goals of the Township, as articulated in its Comprehensive Plan and Zoning Ordinance. White amply demonstrated that three billboards will have little or no impact on development in the Township, would be entirely consistent with the zoning of the land and surrounding area and are consistent with the informed and orderly development of the Township. We think that the evidence White presented satisfied its burden to prove a favorable result when the proposal is considered under each of the review standards listed in the Zoning Ordinance.

The Board objects that this burden is not met. They argue first that a favorable result does not obtain under the first standard, *compatibility,* because the signs would constitute visual pollution of the aesthetically pleasing natural landscape along the River Relief Route. Second, the Board argues that the proposed use fails in *suitability* since it generates no additional revenues for the township and guarantees no exclusivity of use of the signs by local businesses.

At the outset, we doubt that any restriction, limiting the use of the signs to the advertisement of local businesses would pass constitutional muster. Although the Supreme Court's plurality decision in *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490 (1981) has left unsettled the limits to first amendment protection of commercial speech on billboards, the outcome of that case makes it clear that a municipality cannot prohibit the use of billboards for non-commercial speech. A content limitation of the use of White's signs to the advertisement of local business, therefore, would prohibit their use for non-commercial messages and be unconstitutional. With regard to the Board's argument that the signs are unsuitable because they

fail to improve the tax base, our case law is quite clear. In *Brentwood Borough v. Cooper,* 60 Pa. Commonwealth Ct. 462, 431 A.2d 1177 (1981) we stated:

As to concerns about the effect of a particular development on the tax base, we have held that tax base concerns cannot be decisive in a zoning case. . . . Obviously, where municipal officials have legislated that a particular use is allowable upon compliance with specific physical conditions, as here, they cannot be heard to disown that allowance upon the ground that it may be lacking in revenue-producing possibilities.

*Id.* at 467, 431 A.2d at 1179-80 (citations omitted). The Board therefore, cannot maintain that White's proposal fails in *suitability.*

Turning to the argument that the billboards constitute visual pollution and therefore fail under the *compatibility* standard, we note first that, among the six criteria delineated in the ordinance, *compatibility* is the most precise. It prescribes the analysis of a proposed use in light of the potential hazards it may cause by congestion or illumination and glare, restrictions the proposal might create to natural light and circulation of air and the possibility of damage to the environment through air, land, water or noise pollution. Notably absent from the list is consideration of the possibility of visual pollution. To include it implicitly mocks the plain meaning of the provision and the well rooted principle of statutory construction that the mention of one thing in a statute implies the exclusion of other things not mentioned. *Pane v. Department of Highways,* 422 Pa. 489, 222 A.2d 913 (1966); *Cali v. Philadelphia,* 406 Pa. 290, 177 A.2d 824 (1962); *Scott Township Appeal,* 388 Pa. 539, 130 A.2d 695 (1957); *Commonwealth ex rel. Maurer v. Witkin,* 344 Pa. 191, 25 A.2d 317 (1942). Visual pollution is not in-

cluded in the standard of *compatibility* under which the Board examines applications for a conditional use. White consequently did not fail in his burden to show compliance with the requirements for a conditional use.

We do not accept White's view, however, that the Board may consider *only* the factors expressly included in Section 262 C of the Zoning Ordinance. Our cases make clear that the Board may review a proposed use with regard to its general detrimental effect and adverse impact on the welfare of the community, but the burden shifts to those objecting to the proposal to come forward and offer proof.[10] *Bray v. Zoning Board of Adjustment,* 48 Pa. Commonwealth Ct. 523, 410 A.2d 909 (1980); *Derr Flooring Company v. Whitemarsh Township Zoning Board,* 4 Pa. Commonwealth Ct. 341, 285 A.2d 538 (1971). Our cases also make clear that a municipality may include consideration of aesthetic factors in the exercise of its zoning powers. *Berk v. Wilkinsburg Zoning Hearing Board,* 48 Pa. Commonwealth Ct. 496, 410 A.2d 904 (1980); *Mont-Bux, Inc. v. Township of Cheltenham,* 36 Pa. Commonwealth Ct. 397, 388 A.2d 1106 (1978); *County of Fayette v. Holman,* 11 Pa. Commonwealth Ct. 357, 315 A.2d 335 (1973). We note, however, that our Supreme Court has held that aesthetics alone cannot justify zoning decisions. *Norate Corporation, Inc. v. Zoning Board of Adjustment,* 417 Pa. 397, 207 A.2d 890 (1965); *Rogalski v. Upper Chichester Township,*

---

[10] The Board insists that under *Bray,* the applicant retains the burden to prove lack of general detriment to the health, safety and welfare of the community. *Bray* states unequivocally, that with regard to general detriment "[o]bjectors have both the duty and the burden; *the ordinance terms can* place the burden on the applicant but cannot shift the duty." *Bray,* 48 Pa. Commonwealth Ct. at 531, 410 A.2d at 913 (emphasis added). The Board directs us to no language in the Zoning Ordinance which shifts the burden to White.

406 Pa. 550, 178 A.2d 712 (1962). Our decisional line, consequently, links aesthetic factors with considerations of property value. *See Berk,* 48 Pa. Commonwealth Ct. at 500, 410 A.2d at 905-06; *Mont-Bux,* 36 Pa. Commonwealth Ct. at 402, 388 A.2d at 1107; *County of Fayette,* 11 Pa. Commonwealth Ct. at 362, 315 A.2d at 338.

In the case before us, the record reflects objections to the billboards only as an affront to the scenic beauty along the River Relief Route. The record contains no protest that the billboards would be detrimental to property values in the area, or would have an adverse impact on the Township in any other way.[11] While we recognize the legitimate interest of the Township to advance its aesthetic goals as part of its protection of the general welfare, purely aesthetic judgments are far too subjective to alone carry the burden of showing detriment to the public interest. It is particularly difficult to find detriment here, where the size, location and illumination specifications in the Zoning Ordinance are complied with. Without doubt, Susquehanna Township has a right to protect the scenic beauty along the River Relief Route and other roads in the Township. Through its Zoning Ordinance, the Board of Commissioners can regulate billboards or perhaps even ban them outright in particular areas.[12] It can limit billboards to status as a conditional use requiring review and permission of the Board.[13] It can establish rigorous objective standards

[11] We have already noted that any adverse impact alleged because the proposal generates no tax revenues or because local business would not be the sole beneficiaries of advertising may not be considered.

[12] *See Metromedia, Inc. v. City of San Diego,* 453 U.S. 490 (1981) (opinion of Justice WHITE at 508, opinion of Justice STEVENS at 542).

[13] We reject White's argument that to limit billboards to a conditional use while other more offensive uses are permitted as of right in a General Industrial District is contrary to the constitu-

in its ordinance for placement, size, materials or coloration of signs to ensure that the offensiveness of the billboard is minimized as much as possible. What the Board cannot do, however, is grant or deny permits for billboards solely by the discretionary exercise of its subjective aesthetic judgment.

In summary, then, we hold that White sustained his burden to show compliance with the applicable provisions of the Zoning Ordinance. Those objecting, as a matter of law, could not rely on the lack of revenue-producing potential in the proposal to show general detriment to the health, safety or welfare of the community. In addition, the aesthetic arguments of the Board and the citizens who objected were totally subjective judgments and, standing alone, are insufficient to satisfy the burden to show harm to the public interest. The Board consequently abused its discretion in denying White the permit for conditional use on these grounds.

ORDER

Now, December 8, 1982, the order of the Court of Common Pleas of Dauphin County affirming the action of the Board in the denial of a conditional use permit to White Advertising Metro, Inc. and Robert and Mary Louise Klinger is reversed. The Board of Commissioners for Susquehanna Township is hereby ordered to approve the application of White Advertising Metro, Inc. for a conditional use permit as submitted.

President Judge CRUMLISH concurs in the result only.

tional guarantee of equal protection of the laws. We note that Section 204 B of the Zoning Ordinance requires landscaping to screen from view any industrial development, thus minimizing the unattractiveness of those uses. Insofar as billboards are meant to be seen rather than screened from view, we cannot say that the distinction between them and the uses permitted as of right is unreasonable.